**Thomas Robert PAYNE, Jr., Petitioner-Appellant, Cross Appellee,**

v.

**John REES, Warden; Steven L. Beshear, Attorney General, Respondents-Appellees, Cross Appellants.**

Nos. 82–5557, 82–5558.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1983.
Decided June 27, 1984.

Jan R. Waddell (argued), Louisville, Ky., for petitioner-appellant, cross appellee.

David Armstrong, Atty. Gen. of Ky., Frankfort, Ky., Paul E. Reilender, Jr., Asst. Atty. Gen. (argued), for respondents-appellees, cross appellants.

* The Honorable Robert M. McRae, Jr., Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

1. The parties refer in their briefs to the Kentucky charge of "detaining a female." Presum-

Before KENNEDY and WELLFORD, Circuit Judges, and McRAE, District Judge*.

WELLFORD, Circuit Judge.

The district court in this habeas corpus application denied relief from petitioner Payne's Kentucky convictions for rape and for detaining a female, but granted relief from a second conviction for detaining a female. Both parties appeal from the district court's rulings which were adverse to their contentions at the hearing. Petitioner is a very tall young black man who was a well known athlete in Kentucky. He was indicted in May 1972 for raping Myra Thompson on September 4, 1971. Miss Thompson complained to the Louisville police that she had been raped by a tall black man, aged about 20 years, and promptly was given a physical examination at the Louisville General Hospital. The examining physician found no evidence of male sperm in the vagina, nor of her assailant's skin beneath her nails, although she claimed to have scratched him in the face during the attack, nor could he locate foreign pubic hair on her person. Thompson could not identify Payne from a series of mug shots the morning following the rape, and was later able to make an identification only after seeing Payne's picture in the sports section of the newspaper, and after seeing basketball team photographs in which Payne was the tallest person and in the center of the photographs. The Thompson rape indictment also contained a count for detaining Catherine M. Craven against her will with intent to have carnal knowledge on September 9, 1971.

On September 10, 1971, Delores Duggins Horn reported to the Louisville police department that she had been detained [1] by a very tall, athletic, black male. At trial she testified that she had had a conversation with her assailant in a brightly lit area

ably they refer to the kind of charge made in the Craven matter, detaining the victim "against her will with intent to have carnal knowledge of her."

beside her car. She had a second conversation with him when he came to her apartment door. After the assailant grabbed her arm, she screamed and he ran. When police officers investigated the incident, they showed Ms. Horn a single newspaper photograph which showed the petitioner and his professional basketball agent, a caucasian. Police indicated they had a suspect in Ms. Horn's case by telling her "they had cases with the same similarity," and that petitioner was a "suspect in these cases also." Ms. Horn identified petitioner, but not positively, and requested the opportunity to see him in person, but the police did not arrange a line-up.

On August 20, 1971, Nancy Monath reported to the Louisville Police Department that she had been attacked by a young tall "colored male ..., light complected." Petitioner was taller than her estimate of height, heavier, and his skin was a dark brown. Several months after she was attacked, Ms. Monath received a telephone call and was told there was a "suspect" in her case. Ms. Monath was not requested to identify a suspect, however, until nearly six years later.

In May of 1977, the State's prosecutor asked Ms. Monath to come to his office to see if she could identify photographs of a suspect in her case. The prosecutor showed Ms. Monath three pictures, all of which were of petitioner, whom she identified as her attacker.

Payne was not indicted for the Horn and Monath offenses of detaining females until May of 1977. On September 10, 1971, Payne was questioned by Louisville police relating to the Thompson complaint, but released even while publicity about him indicated he was about to go to Georgia to sign a lucrative professional basketball contract. After arriving in Georgia for a basketball career, Payne was arrested and incarcerated there for crimes committed in that state. He was tried and convicted in

Georgia, and his appellate brief in this court indicates that at the time of the first Kentucky indictment he was already incarcerated in Atlanta on pending criminal charges there.[2] Kentucky promptly placed a detainer against Payne after the May, 1972 indictment, but Payne resisted a later effort to return him to Kentucky for trial, being aware of the charges made against him on the indictments. Payne made his first action, through retained counsel, to dismiss the Kentucky May, 1972 indictment a few weeks after Kentucky moved to acquire custody of him in February of 1973.[3] Payne was returned to Kentucky's custody in March of 1977. Over Payne's objection, the cases, involving four sexual offenses against females, were consolidated for trial. Payne's counsel also moved to dismiss the second indictment on grounds of lack of speedy prosecution, and this motion was similarly overruled. Payne was tried in September of 1977, and convicted, on three of the four counts. (Craven was hospitalized and unable to appear, and the charge involving her was continued, then subsequently dismissed at the initiation of Kentucky.) Each of the females involved made an in-court identification of Payne during the trial. Payne appealed his convictions belatedly to the Kentucky Supreme Court, raising three issues:

1) denial of his right to speedy trial;
2) prejudicial pre-indictment delay; and
3) improper and prejudicial joinder of the offenses.

The Kentucky Supreme Court considered all these issues on appeal, and then affirmed each conviction.

In November of 1980, Payne for the first time on appeal, through substituted counsel, attempted to raise and have a hearing before the Kentucky Supreme Court, on the issue of impermissible pre-trial identification procedures. The following month the Kentucky Supreme Court denied Payne's motion for a second direct appeal

---

2. Payne concedes that he was sentenced in Georgia on rape charges to a two year sentence in September, 1972, and to an additional fifteen year sentence in September, 1973.

3. Payne's counsel also formally requested a speedy trial in February, 1977. His prior motion to dismiss, based on delay, was overruled.

from his convictions. The following February, 1981, Payne filed a motion in the state trial court seeking to vacate his sentence on the ground of improperly suggestive identification procedures by the police. The motion was dismissed on procedural grounds; no appeal ensued from this adverse action. In July, 1981, petitioner filed a second motion to vacate his sentence on the identification issue, and, for the first time following trial, alleged insufficiency of proof. This second motion was also dismissed on grounds that the issues should have been raised on direct appeal. A notice of appeal, unfortunately to the wrong state appellate court, was then filed and dismissed for being in the wrong court; an effort to correct this deficiency was held to be untimely for purposes of an appeal. A petition for writ of habeas corpus asserting the first three issues presented on direct appeal to the Kentucky Supreme Court, plus the second two additional grounds for relief attempted to be asserted by motion to vacate sentence, was filed in the federal district court at Louisville.[4]

The trial judge found that Payne had "failed to bring to the Supreme Court's attention specific decisions bearing on the due process aspects of improper identification procedures."[5] He noted that this oversight or omission was attempted to be corrected, unsuccessfully, through the means of what Payne entitled a "Petition for a Second Direct Appeal," which he filed with the Kentucky Supreme Court.

We first consider the speedy trial and related issue of preindictment delay which concededly were appropriately before the district court having been presented to and exhausted in the state court. The district court considered and weighed the applicable factors as set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The first and most obvious element of the claim was the long delay between May, 1972, and February, 1976, the period between issuance of the indictment and the demand that Payne be returned to Kentucky for trial on two separate charges. The district judge was aware of the admonition in *Barker:*

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted).

While the delay on the Thompson charge was sufficient to trigger an inquiry under the *Barker* rationale, "the passage of a fixed period of time does not create a presumption of prejudice" as a necessary consequence. *Cain v. Smith*, 686 F.2d 374, 381 (6th Cir.1982).[6] The more than five year pre-indictment delay in the Horn and Monath matters, however, creates a different problem. Petitioner concedes that even this lengthy pre-indictment delay "does not constitute a violation of speedy trial provisions of the Sixth Amendment." (Appellant's Brief at 41). The question, rather, is whether fundamental due process rights were violated to defendant's demonstrated prejudice. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Petitioner also concedes, as he must, that "loss of memory has been held an insufficient reason to establish prejudice to the accused and 'substantial prejudice' must be shown by an accused before the appellate courts even consider the reason for inordinate delay. *United States v. Townley*, 665 F.2d 579 (5th Cir.) [*cert. denied* 456 U.S.

---

**4.** Payne does not in this appeal contest the joinder issue.

**5.** The district judge ruled, moreover, that "he did not squarely raise this question" in his original brief on appeal.

**6.** The eight month delay between the happening of the alleged rape in the Thompson case and the indictment was clearly not enough to constitute a due process violation.

1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982) ]." (Appellant's Brief at 4) *See also United States v. Barket,* 530 F.2d 189, 196 (8th Cir.1976); *United States v. Avalos,* 541 F.2d 1100 (5th Cir.1976) *cert. denied* 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); *United States v. Netterville,* 553 F.2d 903, 915 (5th Cir.1977) *cert. denied* 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978); *United States v. Largent,* 545 F.2d 1039 (6th Cir.1976) *cert. denied* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977); *United States v. Marion, supra,* 404 U.S. at 324, 92 S.Ct. at 465.

■ Petitioner's counsel contends that the pre-indictment delay interfered with Payne's right to investigate what are claimed to be flawed and tainted identification procedures in the Horn case, and that he had to rely on the memories of his family, two of whom did testify at trial, in respect to his alibi defense of being with them and celebrating his leaving Louisville for Atlanta to play professional basketball. He claims also that the delay prevented seeking out others to augment an alibi defense. He claims that he was not even aware of the Monath charge until nearly six years after the fact, and that prejudice in that kind of circumstance should be presumed.

Speedy trial concerns under the Sixth Amendment have been held to be concerned with delay *after* indictment or presentment, not before, and the statute of limitations is the primary limiting factor in that respect. *United States v. Marion, supra; United States v. Lovasco, supra.* The latter case acknowledges that in cases of pre-indictment delay, "the Due Process Clause has a *limited role* to play in protecting against oppressive delay." Even a showing of *"actual* prejudice" does not make a due process claim "automatically valid." *Lovasco* at 789, 97 S.Ct. at 2048 (emphasis added). In addition, petitioner must show that the government has no valid reason for the delay or that there was some tactical advantage sought to be obtained by delay.

We agree with the trial judge that prejudice is not to be presumed and that Payne has failed to make the difficult and necessary initial showing of actual prejudice with respect to pre-indictment delay, although the unexplained delay here may approach the limits discussed by the Supreme Court. There was no effort or attempt to show that the government gained a tactical advantage by delay.

In respect to post-indictment delay, trial on the second indictment involving Horn and Monath came, after hearing motions filed on behalf of Payne, within four months after issuance of the indictment. There is no basis for any claim in this respect, then, except as to the Thompson charge.

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court listed four factors that are to be weighed in determining whether an accused has been deprived of his Sixth Amendment right to a speedy trial. They are the length of the delay, the reason for the delay, whether the defendant has asserted his right, and prejudice to the defendant from the delay. *Id.,* at 530, 92 S.Ct. at 2192. The Court noted that prejudice to the defendant must be considered in light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.,* at 532, 92 S.Ct. at 2193 (footnote omitted). *United States v. MacDonald,* 435 U.S. 850, 858, 98 S.Ct. 1547, 1551, 56 L.Ed.2d 18 (1978).

■ Negligent delay in this case was weighted against the government because the government has a responsibility to bring the matter to trial even where a defendant is incarcerated in another jurisdiction on pending charges. It is clear,

however, that until 1974 Payne was busy in Georgia answering serious criminal charges, and he resisted being returned to Kentucky even in 1976 while still incarcerated in Georgia on two convictions there.

In 1974, however, as noted by the district judge, Georgia became subject to the Interstate Detainer Act, whereby Payne had the right to demand that a trial be conducted on the Kentucky indictment charges within 180 days. Payne, if really interested in prompt disposition of the Kentucky charges, could have made a constitutional speedy trial demand upon the Kentucky court despite the untoward delay of the State of Kentucky in seeking to enforce its rights under its detainer.

While *Barker* held that "a defendant has no duty to bring himself to trial," (*Id.*, 407 U.S. at 527, 92 S.Ct. at 2190), "this does not mean, however, that the defendant has no responsibility to assert his right." *Id.* at 528, 92 S.Ct. at 2191. The court must weigh, then, "the frequency and force of the objections" that enables a court "to attach a different weight to a situation in which the defendant knowingly fails to object ...." *Id.* at 529, 92 S.Ct. at 2191.

... the Supreme Court has emphasized that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

*Cain v. Smith, supra,* at 384, quoting *Barker,* 407 U.S., at 532, 92 S.Ct. at 2193.

Another circumstance to be taken into account in addition to the lengthy delay following indictment on the Thompson charge, the negligence of Kentucky in moving toward a reasonably prompt disposition of the indictment charges, and whether Payne asserted his speedy trial right, is the prejudice involved to Payne, under all the circumstances. Payne was not incarcerated in Kentucky except for six months prior to trial; his personal liberty was not severely curtailed by reason of Kentucky's delay; rather, the commission of crimes for which he was convicted in Georgia was the reason, in large measure, for the delay in Payne's being called upon to face his accusers in the former jurisdiction with which

we are here concerned. Even when Kentucky, in early 1976, belatedly sought to obtain custody of Payne, he resisted. Some delay was attendant to his efforts to dismiss the indictment without having to go to trial. Payne failed to demonstrate to the district court that the delay so affected him by reason of anxiety and concern about the two pending charges that his constitutional rights were violated. Further, he failed to show in a meaningful way that the delay substantially precluded or impaired his legitimate defense to the Thompson charge. His counsel was able to point to inconsistencies in the prosecuting witness' version of events and in the inherent identification problems presented after the charge was filed with the police.

Over five years post-indictment delay was involved in *Barker,* most of it for the convenience of, and upon the request of, the prosecution; Barker spent a longer period of time following his indictment in Kentucky jails awaiting trial than did Payne in the instant case. There was a longer interval in Barker's case between a motion to dismiss for want of a speedy trial and the actual trial than in this case, yet the court found no constitutional violation. Barker, like Payne, did not appear to want a speedy trial for most of the period involved, and demonstrated no substantial prejudice by reason of delay. There was no deliberate effort by the prosecution in this case to delay the trial, rather there was a negligent failure to proceed. Under all these circumstances, we can find no error in the district court's conclusion that there was no proven speedy trial violation, taking into account all the *Barker* factors, despite the extraordinary delay here involved.

The district court held that despite Payne's failure to raise the tainted identification issue on direct appeal to the Kentucky appellate court, under the rationale of *Crick v. Smith,* 650 F.2d 860 (6th Cir. 1981) *cert. denied* 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982), which "should probably be followed as ... most applicable to the case at bar," the court could apply

the "deliberate by-pass" rule [7] and consider the merits of the identification questions raised in the habeas corpus application. The respondent takes the contrary position here, as it did in the district court, that Payne's failure to comply with state procedure in raising the identification issue precludes habeas corpus relief on that basis under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980) *rehearing denied,* 633 F.2d 443, *cert. denied* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981). There is no question but that Payne failed to raise the unreliable identification issue (and the alleged insufficiency of the evidence issue) in his direct appeal from his convictions. He attempted to raise these issues later in a motion or petition for another direct appeal. That effort was clearly rebuffed on procedural grounds. His later motions to vacate his sentence raising identification questions were dismissed without addressing the merits. The district judge, nevertheless, granted Payne a retrial of the Monath charge, thus granting only that limited relief, but treated on the merits identification issues as to the Thompson and Horn charges, denying relief in respect to them.

*Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), focused on the situation where there was a failure to appeal the later contested issue of a forced confession and on whether the habeas corpus applicant had "deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." 372 U.S. 391, 438, 83 S.Ct. at 848. The court focused on the question, was there an "intentional relinquishment or abandonment of a known right or privilege?" *Id.* at 439, 83 S.Ct. at 849.

*Crick, supra,* held that while *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), did not expressly overrule *Fay,* "exactly what remains of the deliberate by-pass rule ... after *Wainwright v. Sykes, supra,* appears deliberately to have been left uncertain ...." 650

F.2d at 867. The situation in *Crick,* like that in *Fay,* was akin to a "failure to appeal either the transfer of jurisdiction ... or the judgment." 650 F.2d at 867. *Crick,* moreover, was actually decided on neither *Fay* nor *Wainwright* grounds; it, instead, concluded that the error involved was a technical error capable of being deemed harmless error and the case was remanded for purposes of a harmless error analysis.

The better authority, we believe, is *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In that case, the Supreme Court reversed our *en banc* court, and held that a convicted state court defendant, seeking habeas corpus relief, was barred from asserting his constitutional claim (challenging jury instructions on the burden placed upon him in respect to an affirmative defendant of "self-defense") because of his failure to comply with state procedural requirements. The majority opinion emphatically re-emphasized its earlier *Wainwright v. Sykes* rationale, and made only a footnote reference to *Fay v. Noia* (footnote 28). The following language used by the Supreme Court is determinative here:

> These considerations supported our *Sykes* ruling that, when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice.
>
> Respondents urge that we should limit *Sykes* to cases in which the constitutional error did not affect the truth-finding function of the trial. In *Sykes* itself, for example, the prisoner alleged that the State had violated the rights guaranteed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While this defect was serious, it did not affect the determination of guilt at trial.
>
> We do not believe, however, that the principles of *Sykes* lend themselves to this limitation. The costs outlined above do not depend upon [*sic*] the type of claim raised by the prisoner. While the

---

7. *See Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9      L.Ed.2d 837 (1963).

nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing. *We affirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.*

*Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982) (emphasis added).

As in *Hockenbury v. Sowders, supra,* the Kentucky appellate courts have made it clear that denial of Payne's claim about tainted identification procedures was based on the failure to comply with Kentucky's procedural requirements. The broad language heretofore quoted from *Fay v. Noia* has been held to be precluded by *Wainwright. Hockenbury, supra,* 620 F.2d at 112. *See also Jones v. Jago,* 701 F.2d 45, 47 n. 2 (6th Cir.1983) *cert. denied,* — U.S. ——, 104 S.Ct. 274, 78 L.Ed.2d 255 (1984); *Raper v. Mintzes,* 706 F.2d 161, 163 (6th Cir.1983); *Hollin v. Sowders,* 710 F.2d 264, 267 (6th Cir.1983) *cert. denied,* — U.S. ——, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984); *Hockenbury II,* 633 F.2d 443, 444 (6th Cir. 1980) *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981).[8]

The Supreme Court recently considered a case where a federal prisoner sought, by collateral means, to attack a conviction after he had first made a direct appeal and had omitted the grounds of objection to instructions given as "plain error."

Our trial and appellate procedures[9] are not so unreliable that we may afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary a final judgment commands respect.

For this reason we have long and consistently affirmed that a collateral challenge may not do service for an appeal. *United States v. Frady,* 456 U.S. 152, 164–65, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982). To the same effect in the case of collateral attack by a state prisoner on a state final judgment after appeal, *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The "cause and actual prejudice standard" referred to in *Frady* which was "enunciated in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and later *confirmed and extended in Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)," (*Frady* at 167, emphasis added), would seem to apply here.

Under this standard, to obtain collateral relief based on trial errors ... a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

*Frady,* 456 U.S., at 167–68, 102 S.Ct. at 1594–95.

We hold that the *Wainwright, Engle,* and *Frady* "cause" and "prejudice" standards should have been applied to Payne under all the circumstances. Payne[10] failed to demonstrate "cause" for his failure to raise the identification questions on his direct appeal. Even if we were disposed to hold that these police and/or prosecution identification procedures were plainly erroneous, a holding we are not called upon to make, the failure of Payne to overcome the independent procedural ground imposed by Kentucky law to bar consideration of these claims is sufficient here. Payne accordingly cannot now prevail under the *Wainwright* and *Engle* rationale. The district court was in error,

---

**8.** This court rendered an opinion denying a rehearing in *Hockenbury, supra,* which is referred to herein as *"Hockenbury II"*. We do not consider that the dicta in *Walker v. Engle,* 703 F.2d 959 (6th Cir.1983), affects the validity of *Hockenbury* rationale as to the effect of *Wainwright.*

**9.** The procedures involved in *Frady* took place in the District of Columbia.

**10.** We have been advised that in 1983 Payne was released from penitentiary confinement, but he remains on parole.

then, in ordering a re-trial on the Monath conviction. We REVERSE that judgment accordingly and deny the writ in the Monath case.

We AFFIRM the denial of the writ on the Thompson and Horn convictions.