943 F.2d 52
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald E. STARKS, Petitioner-Appellant,
v.
Norris W. McMACKIN, Respondent-Appellee.
 No. 89-3741.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1991.
 
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Ronald E. Starks, appeals the district court's order dismissing his application for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.
 
 
 2
 Starks argues that his state court convictions for aggravated murder and aggravated robbery came in the wake of constitutional violations committed before and during trial. For the reasons outlined below, these contentions are without merit.
 
 I.
 
 3
 On February 24, 1978, a repairman found the bodies of Thomas Kowal and Kim Shusta at their home in Strongsville, Ohio. Thomas Kowal was a dealer in marijuana, and Shusta lived with him. Kowal's brother, Christopher Kowal, testified that, when visiting his brother on February 18, 1989, Thomas Kowal received a call from Dennis Calo who wanted to buy 200 pounds of marijuana. In a statement made to police, Kowal said that he returned to his brother's house the next day and saw Calo's car in the driveway. He entered the house and heard a voice command, "Open the * * * safe." He immediately ran to his car and drove around the neighborhood. When he returned, Calo's car was gone, and he found his brother and Shusta dead. He stated that he was so shocked that he blocked the encounter from his mind and thought of it only as a bad dream. At trial, Kowal said that he did not think he would ever know if his memories were real. Following this testimony, the court declared Kowal a "court's witness," which allowed the prosecutor to cross-examine him. Kowal then said that he described the incident as a dream because he feared for his safety. He also testified that he had consulted a hypnotist in an effort to revive his memory of the incident, but discovered that he was not a good candidate for hypnosis.
 
 
 4
 The police considered Calo a prime suspect and he was subsequently charged with and convicted of aggravated robbery and aggravated murder.
 
 
 5
 In March 1978, petitioner was interrogated regarding the murders and then released. He was not charged until 1983, when a police informant notified police that petitioner bragged to him about getting away with the crime. In a statement made after his arrest, petitioner admitted going to Thomas Kowal's house with Calo, but he denied killing Kowal.
 
 II.
 A. Right to a Speedy Trial
 
 6
 Petitioner argues that he was denied his Sixth Amendment right to a speedy trial because of the five year delay between the commission of the crime in 1978 and his 1983 indictment.
 
 
 7
 A lengthy pre-indictment delay, standing alone, does not violate speedy trial protections of the Sixth Amendment. Payne v. Rees, 738 F.2d 118, 121 (6th Cir.1984). The primary purpose of the Sixth Amendment guarantee of a speedy trial is to minimize the length of incarceration, impairment of liberty, and disruption of life. United States v. Greene, 737 F.2d 572, 576 (6th Cir.1984). Since petitioner's claim is not predicated upon loss of liberty during the delay, he must demonstrate that the delay was attributable to the government and was so oppressive that it substantially prejudiced his ability to present his defense. See Payne, 738 F.2d at 121; Greene, 737 F.2d at 574.
 
 
 8
 The record contains nothing to indicate that the delay in this case was attributable to the government. Furthermore, other than general allegations that evidence was lost, Starks has made no showing of prejudice.
 
 
 9
 B. Right to Remain Silent and Right to Counsel
 
 
 10
 Petitioner contends that his due process rights were violated when the trial court admitted statements that he made after being read his Miranda rights and after requesting to speak with counsel. The Ohio Court of Appeals determined that the statements were made after he was "Mirandized" and before he requested an attorney. Because petitioner does not point to any evidence in the record to demonstrate that this conclusion is erroneous, no constitutional violation occurred and the trial court properly admitted the evidence.
 
 
 11
 C. Admission of Christopher Kowal's Testimony
 
 
 12
 Petitioner contends that the use of Christopher Kowal's testimony violated his due process rights because the court did not observe the procedural safeguards required when examining a witness who has been hypnotized. This claim is without merit because Kowal was never hypnotized.
 
 
 13
 Another objection to Kowal's testimony is that, when the court made him its witness and permitted the prosecution to cross-examine him regarding his "dream" testimony, petitioner was denied confrontation and due process rights.
 
 
 14
 The court's decisions to make Kowal a court witness and to admit his testimony were based upon state evidentiary rules. "It is a well-established rule that state court rulings on the admission of evidence '... may not be questioned in a federal habeas corpus proceeding, unless they render the trial so fundamentally unfair as to constitute a denial of federal rights.' " Logan v. Marshall, 680 F.2d 1121, 1123 (6th Cir.1982) (citation omitted). The court's decisions did not render the proceedings fundamentally unfair, particularly in light of the fact that petitioner's counsel conducted a lengthy cross-examination.
 
 
 15
 D. Admission of Evidence of Other Violent Conduct
 
 
 16
 Petitioner says he was denied a fair trial because the court permitted reference to a barroom confrontation he had with Christopher Kowal and Jeffery Pillar six months after the murders. Both Kowal and Pillar testified that petitioner attacked Pillar. The prosecution introduced the evidence of the fight for two purposes: first, to show that petitioner threatened to kill Kowal if anything happened to petitioner or Calo; second, to demonstrate why Kowal might fear petitioner enough to lie about his ability to distinguish reality from dreams. Because the evidence was not offered to show petitioner's propensity for violence, its admission did not deprive petitioner of his right to a fair trial.
 
 
 17
 E. Right to Confrontation and Cross-examination
 
 
 18
 Continuing his attack on the court's evidentiary rulings, petitioner argues that he was denied his right to confrontation and cross-examination when the court admitted hearsay evidence in the form of police reports. Because the reports were admissible pursuant to Ohio R.Evid. 803(b), an exception to hearsay which permits the admission of records of regularly conducted business activity, the state court's ruling does not present a federal constitutional question.
 
 F. Jury Instructions
 
 19
 In a petition for a writ of habeas corpus, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).
 
 
 20
 Petitioner first asserts that he was denied a fair trial when the court refused to give an instruction on aiding and abetting that mere presence at the scene of a crime is not sufficient to make someone an aider and abettor. The court gave an instruction that petitioner must have "knowingly and purposely aided and abetted, and attended the man that had the gun" and that he must have "knowingly and purposely participated ... as an aider and abettor." In view of this instruction, it was not necessary to tell the jury that mere presence at the scene was insufficient to support a conviction for aiding and abetting.
 
 
 21
 The trial court's instruction also included this language: "In order to be either principal offender or aider and abettor, one must act purposely and knowingly, and thus, must have acted with the kind of culpability required for the commission of the offense." The instructions, in their entirety, comport with Ohio law and clearly state that, to be an aider and abettor in the murders, petitioner must have acted purposefully and knowingly with the required culpability. Therefore, the court's instructions did not render the trial fundamentally unfair.
 
 
 22
 G. Insufficient Evidence to Support a Guilty Verdict.
 
 
 23
 Petitioner argues that there was no proof presented at trial that he aided and abetted Calo with specific intent to kill. He contends that the state can only prove that he was present at the scene of the crime, which is insufficient to support a conviction for aiding and abetting.
 
 
 24
 When reviewing the sufficiency of evidence, an appellate court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979), reh'g denied, 444 U.S. 890 (1979). The record demonstrates that the evidence presented at trial, viewed in a light most favorable to the government, was sufficient to support a guilty verdict.
 
 
 25
 For the reasons stated above, we affirm the judgment of the district court.
 
 
 26
 ---------------
 
 
 
 * The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.