**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lawrence G. DeCLUE,**
**Defendant–Appellant.**

**No. 89–5664.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1990.

Decided Feb. 5, 1990.

Devon L. Gosnell, Asst. U.S. Atty. (argued), W. Hickman Ewing, Jr., U.S. Atty., Office of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

April R. Ferguson, Asst. Federal Public Defender (argued), Memphis, Tenn., for defendant-appellant.

Before MILBURN and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant Lawrence DeClue appeals his conviction on three counts of income tax evasion in violation of 26 U.S.C. § 7201 with respect to his individual income tax returns for the years 1975, 1976 and 1977, and on two counts of willfully and knowingly making false statements on his corporate tax returns in violation of 26 U.S.C. § 7206(1) with respect to corporate tax returns filed by him for fiscal years ending in 1976 and 1977.

I.

Defendant-appellant Lawrence DeClue filed individual income tax returns for 1975 and 1976. The return address was P.O. Box 161084, Memphis, Tennessee 38116. In 1977 DeClue sent the IRS a Form 1040 which contained no financial information. Instead questions were answered "object, self-incrimination." The return address was 4050 Markham Circle, Memphis, Tennessee. The IRS sent a letter to DeClue at this address regarding the insufficient 1977 tax return, but the letter was returned unclaimed. An amended tax return for 1977 was received by the IRS on August 13, 1979. The return bore a return address of 4050 Markham, Memphis, Tennessee. DeClue filed corporate returns for Mortgage Consultants, Inc. for the fiscal years ending June 30, 1976, and June 30, 1977. DeClue was the sole stockholder of Mortgage Consultants.

During the tax years in question, DeClue was in the insurance business and received commission checks from the following insurance companies: Louisiana and Southern Life Insurance Co., University Life Insurance Co., United Family Life Insurance Co., and Commercial Estate Life Insurance Co. Forms 1099, in which the insurance company indicates the amount of commission paid to its agent, were issued by these companies to either Mortgage Consultants or to DeClue personally. Finding a discrepancy between the 1099 forms and the amount of money which Mortgage Consultants or DeClue declared as income for the years in question, the IRS began an investigation of DeClue in 1979.

Nancy Bridges was a special agent with the IRS, who had graduated from Memphis State University with a degree in accounting in 1976 and had completed the income tax course offered by the IRS. Special Agent Bridges went to 4050 Markham Circle and found DeClue there on April 25, 1979. Bridges identified herself as a special IRS agent with the Criminal Investigative Division. DeClue denied that he was Lawrence DeClue, stating that he was Lawrene DeCleux, but refusing to give any

identification. Two days later, Bridges sent a certified letter to 4050 Markham, but it was returned to the IRS unclaimed. On May 3, 1979 Bridges reached DeClue by telephone. DeClue said that it was his right to file a "Fifth Amendment" tax return for 1977 and refused to talk about his taxes. Agent Bridges verified that DeClue was leasing an apartment at 4050 Markham.

Bridges tried to serve DeClue with an administrative summons during the investigation but DeClue would not identify himself so the summons was never served.

During an interview that Agent Bridges was conducting at the home of a witness in the case, concerning trusts that appellant was selling, DeClue showed up and identified himself, but did not discuss his taxes. DeClue called Bridges and asked her to meet with him in Mississippi, concerning the trusts that he was selling, but she refused to go to Mississippi, stating that she needed to talk with him about his personal taxes and would be glad to meet with him about that. It took Agent Bridges three years to investigate the case which involved three personal returns and two corporate returns.

For the fiscal year ending in June 1976, Agent Bridges identified unreported gross receipts of $16,281.62; for the year ending June 1977, she identified unreported gross receipts of $15,936.57. The unreported gross receipts were comprised of insurance commission checks not deposited in the corporate bank account and retained by DeClue. Agent Bridges then computed the taxes due and owing based on the unreported income. For 1975, there was additional tax due and owing of $2085; for 1976, $1994; and for 1977, $3120.

On March 8, 1982, a federal grand jury returned a five-count indictment charging Lawrence DeClue with three counts of income tax evasion in violation of 26 U.S.C. § 7201, with respect to his individual income tax returns for the years 1975, 1976, and 1977, and with two counts of subscribing to false tax returns in violation of 26 U.S.C. § 7206(1), with regard to corporate tax returns filed by him for fiscal years ending in 1976 and 1977. A warrant was issued for his arrest for income tax evasion.

After the indictment, Agent Bridges went to the 4050 Markham address in an unsuccessful effort to locate DeClue. She also tried to locate him at 3444 Spottswood in Memphis.

On July 6, 1983, DeClue filed a Tax Court petition regarding an unrelated disputed tax obligation. The address on the petition was 3444 Spottswood, Memphis, Tennessee 38111. Motions and notices concerning the Tax Court case were sent by registered mail from the IRS to DeClue at five different addresses: 3444 Spottswood, Memphis, TN 38111; 4050 Markham Drive, Memphis, TN 38116; Post Office Box 161084, Memphis, TN 38116; Box 2123, Grand Prairie, Texas 75051; and Post Office Box 11944, Memphis, TN 38111. All of the correspondence was returned, marked "resident refused to accept," "return to sender," or "present address unknown."

In August 1983, after DeClue filed the Tax Court petition, Jay Horne, a special agent with the IRS Criminal Investigative Division, attempted to locate DeClue at the Spottswood address to arrest him on the indictment. Horne talked to a man there who identified himself as DeClue's son, Donald DeClue. Horne identified himself, told him he worked for the IRS and that he needed to reach Lawrence DeClue in connection with a judicial matter. He asked the man to give his father the message.

On June 24, 1985, a hearing was set for the Tax Court petition filed by appellant. An IRS agent from the Criminal Investigative Division was sent to the hearing to apprehend DeClue, but he did not appear at the hearing. DeClue never appeared in the civil case.

Special Agent Bridges took a leave of absence from the IRS from October 1982 until 1987. Upon her return, she suggested trying to trace appellant through his social security account because by that time he was old enough to receive social security. Jeffery Lawson of the IRS was assigned to obtain information about appellant from Social Security, which he re-

ceived in two or three days. The information from Social Security indicated that a social security check was being sent to DeClue at Post Office Box 241575 in Memphis, Tennessee.

On August 3, 1988, IRS agents arrested DeClue in Memphis as he retrieved his social security check from Post Office Box 241575, which was rented in the name of Jimmy Gillard. DeClue refused to identify himself and former Special Agent Jay Horne had to be called to identify him.

On November 7, 1988 appellant filed a motion to dismiss for denial of a speedy trial. After a detention hearing was held, the district court denied the motion on January 3, 1989. The case proceeded to trial on February 6, 1989. At trial, testimony revealed the following:

DeClue started receiving social security checks on the record of his deceased wife in March 1980. The checks were originally mailed to Post Office Box 161084, Memphis, Tennessee 38116. On November 8, Post Office Box 241575 was opened in the name of Jimmy Gillard. DeClue then used this post office box in order to collect social security checks. DeClue moved from Memphis to St. Louis in 1985. He continued to receive social security checks at Jimmy Gillard's post office box in Memphis. Appellant had no driver's license in his name. He did not have a car, house, or bank account in his name. In August 1988, after his arrest, DeClue filed a social security claim on his own record.

Donald DeClue, the son of appellant, testified that for a time during the early 1980s his father lived with him in an apartment on Spottswood in Memphis. Donald DeClue stated that he returned mail sent to his father by the IRS to the IRS and did not tell his father of the envelopes he had received and returned. He confirmed that an IRS agent had been to his apartment looking for his father, but stated that he had not told his father about the meeting. He stated that his father kept a key to the Spottswood apartment and showed up on occasion. He stated that he did not get along with his father and had not spoken with him for two years.

Charles Ralph Hawkins, who ten years earlier had worked for appellant writing insurance, testified that at the time of his employment DeClue had told him that he did not intend to pay income tax and would diversify his income in such a way in order to avoid paying tax. DeClue denied making the statement.

At the close of the government's proof, defense counsel moved for a judgment of acquittal, which was denied. The jury returned a verdict of guilty on all counts on February 9, 1989. On May 17, 1989, DeClue was sentenced to six months imprisonment. DeClue timely filed this appeal. DeClue was permitted to remain on bond pending this appeal.

## II.

Appellant DeClue argues that he was denied a speedy trial under the Sixth Amendment as a result of the government's delay in bringing him to trial. He contends that he was not notified of the charge or brought before the court until August 3, 1988, six years after the indictment and twelve years after the earliest dated count. We will address the two periods—preindictment and postindictment delay—separately as they involve different considerations.

The alleged acts charged in the five-count indictment occurred in the years 1975, 1976, and 1977. In 1977, DeClue submitted an insufficient tax return with questions answered "object, self-incrimination." He sent an amended tax return for 1977 to the IRS on August 13, 1979. The IRS investigation began in 1979. The five-count indictment was not returned until March 8, 1982.

The Supreme Court has held that a preindictment delay does not give rise to speedy trial concerns under the Sixth Amendment. *United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977). This court has held that a due process claim of excessive preindictment delay will fail unless the petitioner can show that the government had no valid reason for the delay or that some tactical

advantage was sought to be obtained by the delay. *Payne v. Rees,* 738 F.2d 118, 122 (6th Cir.1984); *United States v. Greene,* 737 F.2d 572, 574 (6th Cir.1984).

■ Appellant DeClue has made no showing that the delay between the alleged tax evasions and the indictment was an intentional device on the part of the government to gain a tactical advantage in its prosecution. Moreover, the government had valid reasons for any delay. DeClue refused to cooperate with the IRS, denied his identity to Agent Bridges when she appeared at his residence, refused to talk about his taxes over the telephone, and made service of an administrative summons during the investigation impossible by his constant changes of address and the return of certified mail. We find that given appellant's lack of cooperation and the complexity of dealing with five different tax returns, three years was a reasonable amount of time for the IRS to return an indictment. Therefore, DeClue's allegation that the indictment should be dismissed because of preindictment delay must fail.

■ In regard to postindictment delay, the United States Supreme Court has set out four factors to be considered in determining whether a defendant has been deprived of his right to a speedy trial under the Sixth Amendment. In *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972), the Court stated that these factors are (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right, and (4) prejudice to the defendant from the delay. The Court noted that prejudice to the defendant must be considered in light of the interests the speedy trial right was designed to protect:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant

adequately to prepare his case skews the fairness of the entire system.

*Id.* at 532, 92 S.Ct. at 2193.

In the present case, the length of time between the indictment and trial was six years. Appellant contends that the length and reason for this delay are solely attributable to the government. Appellant contends that his changes of address were due to economic necessity, that he was estranged from his son in Memphis who returned his certified mail, that he had other relatives in Memphis who knew of his whereabouts, that he had been receiving a social security check at the Memphis Post Office for five years, and that he did not know that he had been indicted and did not attempt to conceal himself. Appellant also argues that the government made only one attempt to locate him postindictment in 1983 when Agent Horne went to the apartment on Spottswood and spoke with his son. Agent Horne did not state the criminal nature of the case nor ask appellant's son the location of other relatives. Appellant alleges that the government, laid this case on the shelf during Agent Bridges' leave of absence from the IRS from 1982 until 1987 and upon her return was able to locate the place where appellant was eventually arrested within a few weeks through his social security account. Appellant contends that he was prejudiced by this negligence on the part of the government because he was unable to mount a defense due to loss of memory and lack of records, which had been lost during the passage of time.[1]

The government contends that the length and reason for the delay in this case are attributable to appellant DeClue. From the time the criminal investigation began in 1979 until his indictment in 1982, DeClue refused to cooperate with investigating agents. He lied to Agent Bridges, who identified herself as an IRS agent from the Criminal Investigative Division, about his identity and certified mail to him from the

---

1. Appellant's son Donald DeClue testified that tax and business records, which his father had stored in his apartment, were destroyed by a former roommate. William Gran, a friend and business associate of defendant, testified that records he was storing about their business relationship were destroyed in a house fire in 1982.

IRS was returned. From the time of his indictment in 1982 until his arrest in 1988, DeClue was a fugitive. He used multiple addresses and removed his name from common identifying records, such as a driver's license, bank accounts or home ownership, in order to avoid apprehension. He received his social security check in a post office box listed in another name in Memphis, Tennessee, while he was living in St. Louis, Missouri. The government argues that since the delay was caused by DeClue, he should not now be able to take advantage of it.

In analyzing the first two *Barker* factors, the length of and reason for the postindictment delay, we find that the actions of defendant create a strong inference that he was trying to elude apprehension. He was given notice preindictment that he was under criminal investigation by the IRS by Agent Bridges. From that point of time on, he made it difficult for the IRS to locate him by his multiple changes in address, his or his son's return of mail, and lack of assets in his own name. There is no rational legitimate explanation of why he received social security checks at a post office box listed under the name of Jimmy Gillard in Memphis when he was living in St. Louis. The IRS made attempts to locate appellant by sending Agent Bridges to two known addresses and by sending an agent to arrest him at an address listed in a civil tax claim filed by appellant. An agent also was sent to a hearing regarding the civil tax claim. Although the device of tracing appellant through his social security account could have been employed sooner, it was the actions of appellant that precipitated the necessity of using such a device.

In *Barker*, the Supreme Court upheld a conviction in which petitioner had not been brought to trial for murder until more than five years after he had been arrested. The Court found that the reason for and the length of delay between indictment and trial is necessarily dependent upon the peculiar circumstances of each case. The Court stated: "A deliberate attempt to de-lay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily...." 407 U.S. at 531, 92 S.Ct. at 2192. We find that in the circumstances of this case, any negligence on the part of the government in causing the length of the delay is outweighed by defendant's elusiveness, which initially precipitated the delay.

In considering the fourth factor[2] weighed under the *Barker* analysis, prejudice to the defendant, the interests which the speedy trial right was designed to protect must be taken into account. The Supreme Court in *United States v. MacDonald* stated:

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by the passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982).

In the present case, appellant can show no prejudice because of oppressive lengthy pretrial incarceration, disruption of life, or maximization of anxiety and concern between the indictment and trial. Appellant was not incarcerated except for two days pending the detention hearing. Since DeClue denied knowing anything about the indictment, he cannot have suffered anxiety and concern over it.

In regard to impairment to his defense, appellant asserts prejudice in only the broadest terms. "Defendant was so hampered by events subsequent to the indictment, and by the loss of memory and

---

**2.** In the present case, the third factor (the defendant's assertion of his right) is not at issue.

records due to the passage of time, that he was unable to mount a defense." This court has held that loss of memory is an insufficient reason to establish prejudice to the accused. *Payne,* 738 F.2d at 121. Moreover, "substantial prejudice" must be shown by the accused. *Id.; United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). We find that appellant has made only general assertions and has failed to specify what records are unavailable that would aid his defense. The records provided to his accountants to prepare the tax returns were available at trial. The records allegedly kept by his friend Gran did not concern the tax years in question but covered the period from 1979 through 1981. For these reasons, we find that the effect of the passage of time on defendant's ability to present a defense does not amount to substantial prejudice.

Although the delay may have had some possible effect on appellant's ability to present a defense, the actions of appellant precipitated the delay which occurred. The other interests articulated in *Barker* and *MacDonald* are inapplicable to appellant. During the years between indictment and arraignment, DeClue was not incarcerated, under arrest, or subject to release on bond. Under all the circumstances, we find no error in the district court's conclusion that there was no proven speedy trial violation, taking into account all the *Barker* factors. Therefore, the decision of the district court that defendant's right to a speedy trial was not violated is affirmed.

### III.

◼ We must next consider whether the district court erred in denying appellant's motion for judgment of acquittal because there was not substantial evidence to sustain a conviction of tax evasion.

Federal Rule of Criminal Procedure 29 states:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insuffi-

cient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

The standard of appellate review of the sufficiency of the evidence in a criminal case is well settled. "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Appellant alleges that there is insufficient evidence to show that he willfully violated 26 U.S.C. §§ 7201 and 7206(1). Appellant argues that although the government was able to show a gross discrepancy in figures, it failed to show intentional criminal acts on his part.

Willfulness in a criminal tax case means "an intentional violation of a known legal duty." *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). We find that the record contains ample evidence of willfulness. DeClue filed a form 1040 for 1977 which contained no financial information and on which he had typed "object: self-incrimination." DeClue testified that he didn't owe any taxes for 1977, yet by the time he sent the protest return to the IRS, he had received 1099 forms from insurance companies showing receipt of over $35,000 in income for 1977. This income was not reported on the protest return nor was it reported on the amended return filed in August 1979. No tax return was filed for Mortgage Consultants for the year ending June 30, 1978. Thus, this income in 1977 was not reported on DeClue's corporate return either.

Farel Byrd and Aubrey Guy, DeClue's accountants, calculated gross receipts for the corporation based on bank deposits. Yet DeClue constantly took commission checks from the insurance companies and cashed them at grocery stores and other businesses or put them in his personal

checking account. His allegation that he received checks in duplicate or photocopied checks and took the copies to Byrd was unsupported by Byrd's testimony. The record indicates that DeClue failed to provide Byrd with all corporate bank statements even though Byrd made specific requests for them.

Agent Bridges analyzed all of the bank records for all of the deposits into the corporate bank account. She found that not all of the corporate gross receipts, calculated from the earned commission statements contained in the life insurance companies' 1099 forms, had been deposited in the corporate bank account or had been declared as personal income. Substantial understatements of taxes due and owing in comparison with the amount of gross receipts over the three-year period is evidence of DeClue's willful violation of the tax laws. This court stated in *United States v. Garavaglia*, 566 F.2d 1056, 1060 (6th Cir.1977):

> A taxpayer who relies on others to keep his records and prepare his tax returns may not withhold information from those persons relative to taxable events and then escape responsibility for the false tax returns which result. Willfulness may not be inferred from the understatement of income alone. However, when there is evidence of a consistent pattern of underreporting substantial amounts of income together with a failure to record all of the income, an inference of willfulness may be drawn. *Holland v. United States, supra,* 348 U.S. [121] at 139, 75 S.Ct. 127 [at 137, 99 L.Ed. 150 (1954)].

The testimony of appellant's former employee Charles Hawkins that appellant told him that he did not intend to pay income tax is further evidence of willfulness. As discussed previously, there is also evidence that appellant went to great length in order to evade the IRS. After taking the view of the evidence most favorable to the government, we find that there is substantially competent evidence of willfulness to support a conviction of tax evasion. For this reason, the district court's denial of appellant's motion for judgment of acquittal is affirmed.

## IV.

We must next determine whether the district court erred in admitting evidence that a corporate tax return was not filed in 1978.

Appellant contends that the district court violated Federal Rule of Evidence 404(b), which does not allow evidence of a defendant's propensity to commit other crimes, by allowing appellant to be cross examined about his failure to file a corporate tax return for 1978, which was an "other crime" outside the scope of the indictment.

The government argues that the admission of evidence of claimant's failure to file a corporate tax return for 1978 was highly relevant to the charge of income tax evasion for 1977 for the following reason. In 1977 a 1099 issued to defendant reported $17,000 in income, and a 1099 issued to Mortgage Consultants, the business in which appellant was the sole stockholder, reported $18,000 in income. Because DeClue was charged with income tax evasion in 1977 with regard to his personal and corporate tax returns, it was necessary to determine what DeClue did with this $35,000 received in 1977. At trial, DeClue testified that the $35,000 was income of Mortgage Consultants and had been reported on the corporate tax return for the year ending June 30, 1978.

We find that the testimony regarding the failure to file a corporate tax return in 1978 was properly admitted to impeach DeClue under Federal Rule of Evidence 611(b) and was not inadmissible evidence of the propensity to commit "other crimes" of tax evasion under Federal Rule of Evidence 404(b). The government was entitled to prove that the $35,000 was unreported income for 1977, that DeClue had not reported it on a corporate return in 1978 as he claimed, and that he therefore was guilty of tax evasion for 1977. Evidence which is probative of the crime charged and does not solely concern uncharged crimes is not "other crimes" evidence. *United States v. DeLuna,* 763 F.2d 897, 913 (8th Cir.1985). For this reason, the decision of the district court to admit this evidence is affirmed.

## V.

 Finally, this court must determine whether the district court erred in allowing Special Agent Bridges to testify as an expert witness.

Federal Rule of Evidence 702 states:

*Testimony by Experts*

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The decision to allow an expert witness to testify is within the discretion of the trial judge and will not be reversed on appeal unless there is an abuse of discretion. *Hanson v. Parkside Surgery Center*, 872 F.2d 745, 750 (6th Cir.1989).

Appellant argues that IRS agent Bridges, who presented to the jury her computation of appellant's due taxes, was never qualified as a witness and that she offered conclusions of facts, usurping the function of the jury as factfinders and determiners of guilt.

The government argues that there is no basis to attack Bridges' credentials as she has a college degree in accounting, has been a special agent with the IRS for seven years, has regularly taken IRS income tax courses, and has investigated 10–15 cases involving tax computations.

We find that Bridges meets the criteria established by this court for the admission of expert testimony. *United States v. Green*, 548 F.2d 1261, 1268 (6th Cir.1977). Her degree and experience qualify her as an expert and she testified on a proper subject, conforming to a generally accepted explanatory theory. Tax due and owing is an essential element of 26 U.S.C. §§ 7201 and 7206(1) and must be proven by the government.

■ Appellant's argument that Bridges usurped the function of the jury is also without merit. Bridges did not give her opinion about whether appellant was guilty or not; she gave her opinion regarding whether tax was due and owing for the years in question in order to assist the jury in determining a fact in issue. There was no abuse of discretion and the decision of the district court to allow Bridges to testify as an expert witness is affirmed.

## VI.

For the reasons discussed previously, the decision of the district court is AFFIRMED.