983 F.2d 1070
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Robert YEARGIN, Defendant-Appellant.
 No. 92-5162.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1993.
 
 Before SILER and BATCHELDER, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Robert Yeargin was found guilty by a jury on 17 counts of making and subscribing false income tax returns in violation of 26 U.S.C. § 7206(1). On appeal, he argues that the district court violated Federal Rule of Evidence 404(b) by admitting evidence that he used $24,000 from a partnership account to buy a Mercedes Benz for personal use. For the reasons outlined below, we find that the district court did not err in admitting the evidence.
 
 
 2
 Yeargin owned and operated an accounting, bookkeeping, and tax preparation firm in Nashville, Tennessee. In the fall of 1983, Yeargin entered into a number of partnerships with several of his clients to invest in condominium properties in Florida. For each of these partnerships, Yeargin requested that the partners pay half of the down payment for purchase of the respective properties, telling the partners that the profits from ownership of the condominium properties would be split 50-50 between the respective partner and himself. Yeargin kept the records and handled the bank accounts for the partnerships, and he received a power of attorney from each partner to enable him to close on the condos. He filed all the income tax returns for the partners, for himself and for the partnerships.
 
 
 3
 Yeargin's partnership with Everette Kilgrow is the one relevant to this appeal. This partnership was called White Sands Properties and was to consist of six condo units in Panama City and two condo units in Panama City Beach. Each partner was to own three of the units in Panama City and one of the units in Panama City Beach. Yeargin told Kilgrow that each of his three units in Panama City would cost $49,000, and that the one in Panama City Beach would cost $115,000. Yeargin told Kilgrow that it would cost about $5,000 to furnish each of them. Yeargin pressured Kilgrow to pay Yeargin $35,000 as a down payment for the four units before the end of 1983 so that the condos could be bought in the 1983 tax year.
 
 
 4
 On December 19, 1983, John Tune sold a 1984 Mercedes Benz to Yeargin for $44,330.97. Yeargin paid for the automobile with a $20,000 down payment and then a $24,330.97 check for the balance written on December 19 out of the White Sands Properties' checking account. On December 21, Kilgrow or his wife gave Yeargin the $35,000 check for the condo down payments, which Yeargin deposited into the White Sands Properties' checking account to cover his $24,330.97 check to pay for the balance on the Mercedes. At some point, Kilgrow also paid Yeargin about $20,000 to furnish the four units.
 
 
 5
 In 1986, IRS agent Robert Whittle contacted defendant about the 1983 tax returns that he had prepared for the partnerships and for the partners, including Kilgrow. From the bank statements, ledgers and closing documents that Yeargin gave Whittle, Whittle found discrepancies between the cost listed on the properties' closing agreements and the cost listed on the partnership returns. For example, on the White Sands Properties return, Whittle discovered that cost of the townhomes was overstated by $38,200, the cost of the condos was overstated by $10,000, and the cost of the furnishings was overstated by $2,935. Mr. Whittle testified that Yeargin had no explanation for the discrepancies.
 
 
 6
 Brian Calhoun, an IRS employee, also examined the returns involved in this case. He testified that the returns for the partnerships, as well as for the individual returns for three of the partners, were inaccurate because they indicated that the properties and the furniture were purchased in 1983 when they actually were bought in 1984 and that the assets cost more than they actually did.
 
 
 7
 On September 2, 1987, IRS Special Agent Wallace Drueck, Jr. met with Yeargin about the 1983 and 1984 tax returns. He advised Yeargin of the investigation and of his rights. On October 7, 1987, Agent Drueck again met with Yeargin, and Yeargin stated that he had prepared the 1983 and 1984 returns. Yeargin initially told Drueck that at the time he prepared the 1983 returns, he had not been sure about the price of the real estate; however, he later stated that there had been a pre-closing between the properties' developer and him. Yeargin then admitted that the properties should not have appeared on the 1983 tax returns.
 
 
 8
 On October 13, 1987, Agent Drueck met with Yeargin again, and Yeargin admitted that he knew at the time he prepared the returns that they were false. He stated that the property was listed on the tax returns for more than the actual cost. Yeargin told Drueck that he prepared the returns using incorrect figures because the numbers on the returns had to match the figures that he had quoted to his partners, and therefore he had no choice but to put the incorrect information on the returns to avoid being questioned by his partners. Drueck testified that he examined the records for the White Sands partnership and discovered that a check from Kilgrow for $35,000 had been deposited into the account and that Yeargin had written a check out of the partnership account for $24,330.97 to Music Country Motors for the purchase of a car.
 
 
 9
 On July 18, 1990, defendant was indicted on 17 counts of violating federal tax laws, including eight counts of willfully making and subscribing partnership income tax returns that he did not believe to be true and correct for 1983 and 1984, in violation of 26 U.S.C. § 7206(1); eight counts of aiding and assisting in the preparation and presentation of tax returns for the four partners for 1983 and 1984 that were false and fraudulent, in violation of 26 U.S.C. § 7206(2); and one count of willfully making and subscribing to his own 1984 tax return that he did not believe to be true and correct, in violation of 26 U.S.C. § 7206(1). He was not charged with defrauding or stealing from his partners.
 
 
 10
 At trial, Defendant contended that he did not willfully, knowingly, or deliberately prepare and file the false tax returns or assist the four individuals in filing false returns. He testified that he believed the returns were correct when filed because the prices listed represented the amounts he charged the partnerships to buy the units. He also said that because of a pre-closing of the units in 1983, it was proper to list them as being purchased in 1983 rather than in 1984 when they were actually purchased. As to the $24,330.97 check that he wrote out of the White Sands partnership account for the Mercedes, defendant testified that he believed that because he was selling the units to the partnership, the money in its bank account was an advance to him.
 
 
 11
 Although Yeargin had not been charged with defrauding his partners, the government in its opening and closing statements characterized him as "a thief and a liar," but noted that Yeargin was being tried only for being a liar, not a thief. No objection was made to these statements at trial. Yeargin did file a motion in limine asking that the evidence of the Mercedes purchase be excluded because it violated Rule 404(b). After holding a hearing on the matter, the district court denied the motion in limine. The jury found Yeargin guilty on all counts.
 
 
 12
 Yeargin appeals the conviction, arguing that the district court committed reversible error by admitting the evidence of Yeargin's stealing $24,330.97 from partnership funds. Yeargin argues that the admission of this evidence violated Federal Rule of Evidence 404(b) because the evidence of this prior misconduct was used to show that Yeargin acted in accordance with a bad character trait. He contends that the government's purpose was not merely to show his intent, as is demonstrated by the prosecutor's referring to Yeargin as a thief at different stages of the trial and eliciting testimony from witnesses revealing that Yeargin stole from them. The government counters that the evidence was not "other crimes" evidence under Rule 404(b) because it was probative of the crime charged.
 
 
 13
 We find that the district court did not abuse its discretion in admitting the evidence showing that Yeargin bought a Mercedes with partnership funds. Federal Rule of Evidence 404(b) states:
 
 
 14
 Other crimes, wrongs, or acts.
 
 
 15
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 16
 Fed.R.Evid. 404(b).[1] We find that the evidence of the Mercedes Benz purchase was not "other crimes" evidence implicating Rule 404(b), but instead was evidence related to and probative of the crime charged. Evidence of bad acts that is probative of the crime charged and not merely related to uncharged crimes is not "other crimes" evidence under Rule 404(b). United States v. DeClue, 899 F.2d 1465, 1472 (6th Cir.1990). If the evidence concerning a bad act and the evidence of the crime charged are intertwined, Rule 404(b) is not implicated. United States v. DeLuna, 763 F.2d 897, 913 (8th Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 382 (1985). For example, in United States v. Soulard, 730 F.2d 1292 (9th Cir.1984), the defendant was charged with willfully and knowingly subscribing, signing and filing false tax returns for himself and for his firm that distributes ice cream franchises. The government introduced testimony and an unsigned order concerning defendant's purchase of an ice cream truck, which defendant sold in 1977 for a greater amount, as well as testimony of an individual who purchased an ice cream truck in disrepair in 1977. Defendant argued that this evidence was inadmissible under Rule 404(b). The Court held the evidence was not proof that defendant had misbehaved on other occasions, but "was relevant because it bore directly on the charged offense of subscribing false tax returns." Id. at 1302. The evidence was admissible to show that defendant knew he had incurred profit and therefore personal income that he failed to report to the IRS and thus was evidence tending to show the elements of the charge. Id.
 
 
 17
 Here, the Mercedes Benz evidence was tied integrally to the government's argument that the properties listed on the 1983 tax return in fact were not bought in 1983. The testimony of the Mercedes dealer and the documents he produced indicated that Yeargin wrote a check out of the White Sands partnership account on December 19, 1983, for over $24,000, the balance owed on the car. The testimony of Kilgrow indicates that at nearly the same time as the Mercedes purchase, Yeargin had been pressuring Kilgrow to come up with the $35,000 down payment for the condos, ostensibly so that these condos could be purchased in 1983. When Kilgrow gave Yeargin the check for $35,000 on December 21, 1983, that money covered the check Yeargin wrote to purchase the Mercedes. In fact, the condos did not close until April of 1984. Thus, the circumstances of the car purchase were evidence that the properties were not purchased in 1983 because the funds from the White Sands partnership were spent on the car purchase, and not on the purchase of the six condos claimed on the 1983 return.
 
 
 18
 This evidence also was an integral part of the government's proof of Yeargin's knowledge of the crime. Yeargin knew that the 1983 return, which stated that partnership had bought six properties that year, was inaccurate because he knew that he had spent most of the down payment for these properties on his Mercedes. Because Yeargin had spent the money on something else, the jury could reasonably infer that he must have known that the partnership had only bought two properties that year, not six, and therefore was entitled to a depreciation deduction only for the two bought. Therefore, the Mercedes evidence was part and parcel of Yeargin's charged offense of filing false tax returns and was so intertwined with that crime that it could not have been excluded. The Mercedes evidence also helps to demonstrate the willfulness in Yeargin's falsification of the 1983 tax returns. As Yeargin admitted to IRS Agent Drueck, he had no choice but to fabricate the tax returns to show that the properties had been bought in 1983 because Kilgrow had given him a down payment in 1983 expecting that the properties would be bought that year.
 
 
 19
 Because the Mercedes evidence clearly is not Rule 404(b) evidence, we need not examine whether the admission of the evidence would have been proper under the standards applicable for admission of "other crimes" evidence. See United States v. Gessa, 971 F.2d 1257 (6th Cir.1992) (en banc). The evidence was admissible because it was relevant to the scheme surrounding the charged offense and was not unduly prejudicial under Federal Rule of Evidence 403. Evidence is unfairly prejudicial under Rule 403 only when it possesses an "undue tendency to suggest a decision on an improper basis." United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991). Here, the Mercedes evidence was not unfairly prejudicial because the probative value of the evidence substantially outweighed the prejudicial effect on Yeargin. The evidence was important to show where the White Sands partnership money went and to show Yeargin's knowing and willful filing of false tax returns. Therefore, the admission was not improper.
 
 
 20
 And, the government's mention of the Mercedes purchase in its closing argument does not warrant reversal. No objection was made to the prosecutor's statements that Yeargin was a "liar and a thief." Therefore, unless the statements were plain error in that they undermined the fundamental fairness of the trial and led to a miscarriage of justice, we cannot reverse the conviction based on those statements. See United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976). The statements do not constitute plain error. Although the prosecutor called defendant a "liar and a thief," he did state clearly in both opening and closing that defendant was not on trial for being a thief but only on trial for being a liar. In any case, the references to the Mercedes purchase in the government's opening and closing were not improper because admission of the evidence itself was proper.
 
 
 21
 Therefore, because the district court did not abuse its discretion in admitting the evidence, defendant Yeargin's conviction must be AFFIRMED.
 
 
 
 [1]
 Rule 404(b) was amended effective December 1, 1991. Yeargin's trial, however, was held in September of 1991. Therefore, the former Rule 404(b) applies to the evidentiary rulings made during his trial