NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0372n.06
Filed: May 10, 2005

No. 03-6586

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

      v.

GEORGE KRUSHINSKI,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Eastern District of Kentucky

_____/

**Before: GUY, BATCHELDER, and GIBSON, Circuit Judges.**[*]

**PER CURIAM.** Defendant George Krushinski was convicted by a jury of mailing a threatening letter to a Postmaster in violation of 18 U.S.C. § 876, making harassing telephone calls in interstate commerce in violation of 47 U.S.C. § 223(a)(1)(D), making a destructive device or bomb in violation of 26 U.S.C. § 5861(f), possessing a destructive device or bomb in violation of 26 U.S.C. § 5861(d), and attempted murder of a postal employee in violation of 18 U.S.C. § 1114. In this direct appeal, he contends that the district court erred when it denied his motion to suppress evidence and when it allowed the prosecutor to solicit testimony about uncharged crimes. After reviewing the record, briefs,

---

[*]The Honorable John R. Gibson, United States Court of Appeals Judge for the Eighth Circuit, sitting by designation.

and having heard oral argument, we **AFFIRM** Krushinski's convictions but **VACATE** his sentences and **REMAND** for resentencing.

## I.

Krushinski was a commercial truck driver who lived on a farm in Harrison County, Kentucky. He normally drove routes in the eastern United States during the weekdays and returned to his home on weekends. In 1997, Krushinski called the post office in Cynthiana, Kentucky, to complain that his carrier was leaving his mailbox open and his mail was getting wet. He called again in 1998, and was very angry. On September 11, 1998, someone threw eggs inside the Cynthiana post office lobby. Store and bank videotapes revealed that someone driving a two-toned pickup truck had purchased eggs from a convenience store near the post office early in the morning on September 11, 1998. During 1998, Krushinski drove a two-toned, red and white pickup truck. The Cynthiana Assistant Chief of Police identified Krushinski as the person in the videotape purchasing eggs. Krushinski admitted to writing a note addressed to the Postmaster on September 12, 1998, which read: "I've warned you bastards many times about leaving my mailbox open, now you will pay." He denied the egging incident. From April to September 2001, on several occasions, someone poured eggs, acid, gasoline, and other liquid into mail collection boxes and inside the lobby.

During 2001 and 2002, Mary Carol Vance, a rural mail carrier, regularly delivered mail to Krushinski's home on White Oak Pike. Vance drove her Chevy Blazer with attached postal signs and an orange flashing light. Vance also lived on White Oak Pike, about five miles away from Krushinski. Early in the morning on November 18, 2001, Vance heard a loud explosion outside her house. A pipe bomb had exploded under her Blazer, damaging

her car and other family cars. For the next several months, Vance received several prank collect telephone calls early in the morning. Vance used the caller identification on her telephone to record the originating numbers. On December 20, 2001, Vance received a call at 4:05 a.m. from LaVergne, Tennessee. On January 11, 2002, she received a call from White Sulphur Springs, West Virginia. The next call on January 17, 2002, was from Roanoke, West Virginia, and the last call on January 18, 2002, was from Alabama. Vance's mother, who lived next to Vance, also received prank telephone calls. Krushinski's employer's records indicated that his driving routes were near the locations where the calls originated.

In February or March 2002, Krushinski complained to the post office again about his mail carrier leaving his mailbox open. In January and April 2002, he wrote letters to his congressman complaining that postal workers intentionally failed to deliver his property tax bills and intentionally ruined his mail by leaving his mailbox open.

On September 3, 2002, a boy saw a pipe bomb in his family's mailbox on Kings Lane in Cynthiana. This mailbox was on Vance's delivery route. Bomb technicians were able to disarm the bomb.

Federal agents executed a search warrant at Krushinski's residence on October 4, 2002. Attached to the affidavit supporting the search warrant was a photograph of Krushinski's home. Agents found containers of smokeless powder, tape, glue, paint, metal pieces and shavings, welding equipment, and other tools. A laboratory analysis of the exploded and unexploded bombs and a comparison to the items seized from Krushinski's residence indicated that particles in the bombs were consistent with the items seized. Krushinski's vise and pipe wrench produced the tool markings on the unexploded bomb.

A grand jury returned a twelve-count indictment against Krushinski. The indictment alleged that on September 12, 1998, Krushinski damaged property of the United States Post Office at Cynthiana, Kentucky, and deposited a written threat to injure Gary Kemper, the Cynthiana Postmaster. The indictment further alleged that on November 18, 2001, Krushinski maliciously damaged a vehicle used to deliver the United States mail, used a destructive device or bomb in relation to the malicious damage to the vehicle, made a destructive device or bomb, and possessed a destructive device or bomb which was not registered to him. The indictment also alleged that on September 3, 2002, Krushinski made a destructive device or bomb, possessed a destructive device or bomb which was not registered to him, obstructed the passage of the mail, attempted to kill Mary Vance, and used a destructive device or bomb in his attempt to kill her. He was also charged with making telephone calls in interstate commerce to harass Mary Vance.

Before trial, Krushinski moved to suppress evidence seized pursuant to the search warrant because the application for the warrant was supported by a photograph that federal agents took while allegedly on Krushinski's property unlawfully. The district court denied his motion.

At trial, the prosecutor questioned Carolyn McIntosh, the retired supervisor of the Cynthiana Post Office. The prosecutor asked whether she was "aware of any events that happened regarding vandalism of post office property while you were supervisor?" When defense counsel objected, the court responded: "Well, she can tell that she knows about vandalism at the post office." Defense counsel asked, "As it respects the defendant?" The court replied, "That's not the question. The question just asked generally about vandalism

at the post office." Defense counsel objected to the "general question," and the court overruled the objection. McIntosh then testified about several occasions when unidentified liquids were dumped in collection boxes, and when a liquid that smelled like gasoline was dumped in the lobby.

At the close of McIntosh's direct testimony, the following exchange occurred:

> [Defense counsel:] Your Honor, the Court has, over the strenuous objection of the defendant, permitted this witness to go into a variety of vandalism acts occurring at the post office which permits, I believe, an impermissible inference that the defendant was somehow related to these or somehow involved in these, and I think there is absolutely no evidence, there is absolutely no basis, there is absolutely no witness that in any way connects the defendant to these, and I think it unduly prejudices him to the extent that we must feel compelled to make a motion for a mistrial.

> The Court: Okay.

Mr. Zerhusen?

> [The prosecutor:] Well, first of all, there is a charge that specifically relates to the defendant, and some of the testimony that this witness gave does relate specifically to that event, and it will be further explored. Other events that were going on at that time certainly did occur. The defendant is not charged with those. There was nothing that was asked about linking the defendant to any of these particular events. It was what the situation was at the post office during these times.

> One of the other charges that is contained within this indictment concerns threatening communication to the postmaster and others. These events that are going on put in context what was going on at the time that this was happening at the post office. It is not -

> [Defense counsel:] The only incident that I'm aware of in which there is any testimony or an effort by the government to connect Mr. Krushinski is the egging. The acids, the bleaches, the things that were poured in, everything else, it's as if he's responsible for all of this, and I think it casts him in a very poor light impermissibly.

The Court: I understand what you're saying, and I'll deny your motion for a mistrial.

Carrie Self, the Cynthiana Postmaster, also testified about the acts of vandalism based on records from the postal service. Defense counsel renewed his objection, and the court again overruled it. Self testified about ten incidents, two of which Krushinski was charged with (the egging and the threatening letter). The other incidents occurred between April and September 2001, and involved unknown liquids, gasoline, or eggs being dumped in mail collection boxes and on the floor of the post office lobby. During defense counsel's cross-examination of Gary Smith, a special agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF), Smith conceded that he had no credible information that Krushinski was involved with the uncharged acts of vandalism.

At the close of the government's case, defense counsel renewed his motion for a mistrial, but the court denied the motion again. The parties did not request a jury instruction regarding the uncharged acts evidence, and the court gave no such instruction.

Krushinski testified at trial and denied egging the post office and the other acts of vandalism, making the prank phone calls, and any involvement with the bombs. The jury found Krushinski not guilty of egging the post office or bombing Vance's car. It found him guilty of depositing the 1998 letter to the postmaster, the telephone threats to Vance, and all the counts relating to the unexploded bomb in the mailbox, including the attempted murder of Mary Vance.

**II.**

Krushinski raises two issues on appeal.  First, he argues that the district court erred by allowing prosecution witnesses to testify about uncharged acts of vandalism against the post office.  Second, he argues the district court erred by denying his motion to suppress.

## A.    Testimony Regarding Uncharged Acts

We review a district court's evidentiary determinations for abuse of discretion. *United States v. Price*, 329 F.3d 903, 905 (6th Cir.), *cert. denied*, 540 U.S. 920 (2003); *United States v. Copeland*, 321 F.3d 582, 595 (6th Cir. 2003).  Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

This court has specified four necessary steps before 404(b) evidence can be properly considered by a jury.  *See United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996).  First, upon objection, the proponent of the evidence must identify the specific purpose or purposes for which the proponent offers the evidence.  *Id*. at 1077.  Next, the district court must determine whether the identified purpose is material or in issue in the case.  *Id*.  If it is, then the court must weigh the evidence's probative value against its prejudicial value pursuant to Rule 403.  *Id*.  Finally, after receiving the evidence, the district court must instruct the jury as to what limited purpose they may consider the evidence.  *Id*.

Krushinski contends that the testimony regarding the uncharged acts of vandalism falls under Fed. R. Evid. 404(b), and that none of the four steps above were satisfied.  If the testimony was offered as 404(b) evidence, we would agree that neither the prosecutor nor the district court complied with the steps outlined above.  The prosecutor did not indicate a

specific purpose for the evidence, rather he stated that the evidence was intended to show the

situation at the post office at the time Krushinski allegedly committed the offenses charged

in the indictment. Moreover, the district court did not decide whether this background

information was relevant to the case, or whether it was outweighed by its prejudicial value.

Finally, the district court failed to give a limiting instruction concerning the uncharged acts

of vandalism.

The government disputes that the testimony is 404(b) evidence because it is

inextricably intertwined with the charged crimes, and therefore argues that the fact that the

court did not satisfy the four steps above is irrelevant.[1] Whether or not the testimony is

404(b) evidence, it should not have been admitted. At trial, the government did not attempt

---

[1]In *Price*, 329 F.3d at 904-05, the defendant was charged with being a felon in possession of a firearm and ammunition. At trial, the defendant stipulated to being a felon but disputed ownership of the firearms and ammunition. He argued that they belonged to his wife and that he stayed at her home only on weekends. Officers found evidence in the bedroom that tended to show the defendant lived there. One piece of that evidence that the government sought to introduce was a certificate of completion of a handgun safety course issued to the defendant. The defendant objected, arguing that the certificate was evidence of another crime, because the certificate specified that he possessed and used a firearm as part of the course, and because he was a felon at the time he took the course, the certificate was evidence that he committed another count of being a felon in possession of a firearm. This court rejected the defendant's argument, holding: "Rule 404(b), however, does not apply to evidence that itself is probative of the crime charged, without regard to whether any 'other act' occurred. . . . Here, as the district court found, the certificate itself is circumstantial evidence that Price possessed the firearms and ammunition found on May 5, 2001 [the date agents searched the home], regardless of whether Price possessed a Glock firearm on April 17, 2001 [the date the certificate was issued]." *Id*. at 906.

Similarly, in *United States v. DeClue*, 899 F.2d 1465, 1472 (6th Cir. 1990), we held that evidence of a defendant's evasion of corporate taxes was not 404(b) evidence because it directly implicated whether he properly reported income for the tax years at issue in the indictment. We stated that "[e]vidence which is probative of the crime charged and does not solely concern uncharged crimes is not 'other crimes' evidence." *Id*.

The government now argues that Krushinski was circumstantially linked to the uncharged acts of vandalism, and that those acts were inextricably intertwined with the evidence regarding the charged offenses and therefore not 404(b) evidence. We disagree. There was absolutely no evidence linking Krushinski to the uncharged acts of vandalism. Furthermore, unlike *Price* and *DeClue*, the uncharged acts were not evidence directly relating to whether Krushinski was guilty of the crimes charged.

to link the other acts of vandalism to Krushinski, nor to any of the crimes for which he was charged. It was simply irrelevant.

Although we find the admission of this evidence to be error, we also conclude the error was harmless. "An error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights—that the judgment was substantially swayed by the error." *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001) (internal quotation marks and citations omitted). An evidentiary error is harmless "unless it is more probable than not that the error materially affected the verdict." *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993). Therefore, we examine whether "it [was] more probable than not that the jury would have reached the same verdict based on the evidence properly admitted at trial, without regard to [the improperly admitted] testimony." *Id*. "In determining whether an error is harmless, the reviewing court must take account of what the error meant to the jury, not singled out and standing alone, but in relation to all else that happened." *United States v. Hardy*, 228 F.3d 745, 751 (6th Cir. 2000) (internal quotation marks, brackets, and citation omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

The error here was harmless because the jury acquitted Krushinski of the crimes most closely related to the uncharged acts, the egging of the post office and the bombing of Vance's truck just months after the uncharged acts, and because there was other strong evidence linking Krushinski to the crimes of which he was convicted. He admitted to writing the threatening letter to the postmaster. His trucking company's dispatch record revealed that he was dispatched to the locations from where the harassing calls originated. Finally, the

charges relating to the unexploded pipe bomb were supported by evidence that Krushinski's tools made the bomb.

**B.      Motion to Suppress**

On an appeal of a motion to suppress evidence, we review the district court's conclusions of facts for clear error and its conclusions of law *de novo*. *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992). Prior to trial, Krushinski moved to suppress evidence found at his home as a result of the search warrant. He alleged that the federal authorities illegally trespassed onto his property to obtain a photograph and description of his home, and that the description and photograph were used to obtain the warrant. In support of his motion, Krushinski included his own affidavit which stated that his house was not visible from the road or any adjoining property because the property surrounding his house was hilly. He averred that the only way a person could have taken the photograph attached to the warrant application was to be on his property. In its response to Krushinksi's motion, the government conceded that Smith, the ATF agent, walked onto Krushinski's property and from there observed and photographed the house. The district court denied Krushinski's motion, stating that even if the officer trespassed to take the photograph, the photograph was not required to establish probable cause. On appeal, Kruskinski argues that the warrant was unlawful because it was the fruit of the unlawful trespass.

The independent source rule holds that evidence obtained through sources wholly independent from any information collected illegally should be admitted. *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996). This circuit recently joined others in holding that when a search warrant application includes information obtained from an illegal search, the

fruits of the search warrant are not excluded unless the tainted information affected the judge's decision to issue the warrant in a substantive, meaningful way. *United States v. Jenkins*, 396 F.3d 751 (6th Cir. 2005). In *Jenkins*, a search warrant for a hotel room was issued upon consideration of an affidavit and information officers conveyed to the judge orally. One of the officers told the judge that a bag in the room contained "bricks" of drugs. Another officer had discovered the bricks through an illegal search. Applying *Murray v. United States*, 487 U.S. 533 (1988)[2], we held that "the simple fact that an application for a warrant contains information obtained from an illegal search does not by itself signify that the independent source doctrine does not apply. If the application for a warrant 'contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, providing that the officers were not prompted to obtain the warrant by what they observed during the initial entry.'" *Id.* (quoting *United States v. Herrold*, 962 F.2d 1131, 1141-42 (3d Cir. 1992) (internal citation omitted)). Applying this standard, we concluded that the affidavit on its own created probable cause sufficient to support the search warrant, and therefore the fruits of the search conducted under the search warrant should not have been suppressed. *Jenkins*, 396 F.3d at 760.

This case is analogous to *Jenkins*. Even if a trespass on Krushinski's property produced the photograph, the affidavit otherwise sufficiently described Krushinski's property. "The test for determining whether a search warrant describes the premises to be

---

[2]*Murray* held that a search pursuant to a warrant would not be an independent source of evidence if the magistrate issuing the warrant considered information obtained by an illegal search. 487 U.S. at 542.

searched with sufficient particularity 'is not whether the description is technically accurate in every detail,' but rather whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched.'" *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (quoting *United States v. Prout*, 526 F.2d 380, 387-88 (5th Cir. 1976) and *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989)) (internal citation omitted).  Here, the affidavit described the property as "[t]he residence, property, outbuildings and/or structures and any vehicles located on the property which are registered to George and/or Geneva Krushinski, located at 8549 Highway 356, Cynthiana, Harrison County, Kentucky, specifically described in Exhibit "B", attached hereto and made part thereof."  Krushinski's mailbox announced his street address.  The correct address on the warrant was sufficient for officers to locate his home without a reasonable probability that another house would be searched accidentally.

## C.    Sentencing

After the parties filed their briefs, Krushinski submitted a letter pursuant to Fed. R. App. P. 28(j), in which he argues for the first time that *United States v. Booker*, 125 S. Ct. 738 (2005), requires us to vacate his sentence and remand for resentencing.  Krushinski was sentenced to a total of 495 months, which included a statutory mandatory minimum of 360 months for using a destructive device during a crime of violence.  He was sentenced to an additional 135 months on the other six counts, each of those counts to run concurrently with each other.  The federal sentencing guidelines provide that multiple counts be separated into groups of closely related counts, and the offense level applicable to the group with the

highest offense level becomes the combined offense level, after it is adjusted for the seriousness of the counts in the other groups. U.S.S.G. § 3D1.2, § 3D1.3. The group with the attempted murder count carried the highest offense level. Attempted murder carries a base level of 28, and the other groups were sufficiently less serious that they did not increase the combined offense level above 28. Accordingly, the combined offense level was 28 before any enhancements. The district court added three points to the base offense level because the offense was allegedly motivated by the victim's official status, and added two points for obstruction of justice because it concluded that Krushinski's testimony in his own defense was false. The guideline range for a base offense level of 33 with a criminal history category of I was 135-168 months. If the court had not added those five points, the guideline range would have been 78-97.

In *Booker*, the Supreme Court reaffirmed the principle that a district court violates the Sixth Amendment if it bases a defendant's sentence at least in part on a judge-found fact, and held that the federal sentencing guidelines are now advisory rather than mandatory. In *United States v. Barnett*, 398 F.3d 516 (6th Cir.), *reh'g denied*, 400 F.3d 481 (2005), we determined that when a defendant was sentenced under the mandatory sentencing guidelines regime, we should vacate the defendant's sentence and remand for resentencing consistent with *Booker*. The government concedes that the district court engaged in judicial fact-finding when it added points to Krushinski's offense level for obstruction of justice and official status motivation. The government also concedes that pursuant to *Barnett*, vacating Krushinski's sentence and remanding for resentencing is appropriate. Accordingly, for the

reasons stated above, we **AFFIRM** Krushinski's convictions but **VACATE** his sentences

and **REMAND** to the district court for resentencing consistent with *Booker*.