**UNITED STATES of America,**

v.

**Charles C. STONE, Dora B. Stone, and L. Byron Woody.**

No. 1:02–CR–189.

United States District Court,
E.D. Tennessee,
at Chattanooga.

July 8, 2004.

Stephanie Evans, U.S. Dept of Justice, Washington, DC, for Plaintiff.

Roger W. Dickson, Miller & Martin, Chattanooga, TN, for Defendant.

## MEMORANDUM & ORDER

COLLIER, District Judge.

During the trial of this case the Court faced an evidentiary decision regarding whether a witness, Internal Revenue Service Officer Teresa Cantrel, could testify as an expert and, if so, regarding the extent of that testimony. Involved in the issue was whether Ms. Cantrel, if allowed to testify as an expert, could rely upon statements made to her by non-parties in formulating her opinion. When the Court reached its decision it announced it might clarify or elaborate on its decision. The purpose of this memorandum is to add that clarification.

## I. BACKGROUND

Ms. Cantrel is a Revenue Officer with eighteen years of experience with the Internal Revenue Service ("IRS"). The prosecution sought to call Ms. Cantrel to testify as an expert witness. Anticipating the issue the prosecution filed a Trial Memorandum (Court File No. 73) and in this memorandum stated that Ms. Cantrel would be asked to testify as an expert in corporate and individual tax computation. When the issue was raised on the first day of trial, the defense indicated it had objections to Ms. Cantrel's testimony.

Defendants Charles Stone, Dora Stone, and Byron Woody were on trial for tax fraud. Defendants were owners and/or officers of Benton Manufacturing Company. All three defendants were charged in Count One with conspiracy to defraud the United States in violation of Title 18, United States Code, § 371, and Charles Stone and Dora Stone were charged with three counts of attempted tax evasion in violation of Title 26, United States Code, § 7201.

According to the Trial Memorandum and her testimony at trial, Ms. Cantrel has a B.S. in accounting from the University of Tennessee at Chattanooga, eighteen years of experience as an IRS agent, and a Certified Public Accountant license from Texas. She has audited numerous individuals and corporations to compute their correct tax liability.

In their response to the Government's Trial Memorandum (Court File No. 80), Defendants argued Ms. "Cantrel cannot testify about certain inadmissible hearsay evidence—specifically her conversations with non-testifying witnesses—to form the bases of her expert opinion." Defendants stated that the cases relied upon by the Government for support of its position do not support its position. They largely based their argument upon the recent United States Supreme Court decision of Crawford v. Washington, —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). They concluded by arguing that Agent Cantrel cannot testify about her conversations with non-testifying witnesses. However, Crawford actually addressed itself to a specific type out-of-court statement, what the Court called "testimonial" statements. According to the Court in Crawford, testimonial statements defy easy description but the Court approved of three such descriptions, the first description consisting of statements that are " 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " Crawford, —— U.S. at ——, 124 S.Ct. at 1364. Not all out-of-court statements, however, implicate the Sixth Amendment's concerns. Id.

At the end of the trial proceedings on March 24, 2004, counsel argued this issue. The Court engaged in a spirited dialogue with all counsel to better understand the arguments and issues. With Crawford being such a recent case, having been decided after the Government's trial memorandum was drafted, it played an important role in the arguments. The argument clarified and narrowed the objections and the facts underlying Ms. Cantrel's anticipated testimony. After considering the applicable law, the arguments of counsel, and the facts as represented by counsel, the Court found Ms. Can-

trel's expertise to be established, allowed Ms. Cantrel to testify as an expert witness in the proffered field, and allowed Ms. Cantrel to render opinions based upon out-of-court statements from witnesses that did not testify at trial.

## II. ANALYSIS

### A. IRS Employee May Testify as Summary Witness and Expert Witness

Whether to accept a witness as an expert or not is committed to the sound discretion of the trial judge. *United States v. Tarwater,* 308 F.3d 494, 512 (6th Cir.2002); *see Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716–17 (6th Cir.1999).

▆▆▆▆ The Government offered several cases in support of its position that Ms. Cantrel be allowed to provide summary testimony and to testify as an expert witness in the area of corporate and individual tax computations. First, the case law is uniform in establishing that a summary witness may be used to summarize evidence in an income tax prosecution. In the most recent case in this circuit to discuss this issue, *United States v. Sabino,* the United States Court of Appeals for the Sixth Circuit explained a summary witness, such as the IRS employee in that case, was allowed to summarize and analyze the facts indicating a defendant's willful tax evasion so long as the summary witness does not directly embrace the ultimate question whether the defendants intended to evade income taxes. 274 F.3d 1053, 1067 (6th Cir. 2001), *amended on other grounds by* 307 F.3d 446 (6th Cir.2002). While a summary witness may not give a legal opinion that determines guilt or that instructs the jury on controlling legal principles, a summary witness may give her opinion that tax liability would arise under certain circumstances and may opine whether particular payments would be taxable. 274 F.3d at 1067.

In addition to providing summary testimony, the Sixth Circuit has repeatedly allowed IRS employees to testify as expert witnesses. In *United States v. DeClue,* an IRS agent presented her computation of the defendant's due taxes and gave her opinion regarding whether tax was due and owing for the years

in question. 899 F.2d 1465, 1473 (6th Cir. 1990). The Sixth Circuit held the IRS employee's testimony addressed a proper subject, an essential element of attempted tax evasion, and was offered to assist the jury in determining a fact in issue. *Id.* It held there was no abuse of discretion in allowing the IRS agent to testify as an expert. *Id.* In *United States v. Collins,* the Sixth Circuit permitted an expert witness to assume hypothetical facts and to explain the tax implications involved in the alleged *Klein* conspiracy. 78 F.3d 1021, 1037 (6th Cir.1996). Citing to a 1986 Eleventh Circuit decision, the court stated "[e]xpert testimony on the income tax implications of certain actions are [sic] clearly permissible." *Id.* (citing *United States v. Barnette,* 800 F.2d 1558, 1568 (11th Cir. 1986)).

In *United States v. Monus,* an IRS revenue agent testified as an expert witness, opining in response to hypothetical questions that particular payments would be taxable and that certain events would trigger tax liability. 128 F.3d 376, 385–86 (6th Cir.1997). Citing *DeClue,* the Sixth Circuit stated, "[s]uch testimony is permissible as an expert opinion to help the jury determine a fact in issue." *Id.* at 386. As recently as 2002, the Sixth Circuit approved a district court allowing an IRS agent to testify as an expert witness regarding a defendant's under-reporting of income. *United States v. Tarwater,* 308 F.3d 494, 502, 512–14 (6th Cir.2002). In that case, the IRS agent applied the principles and methods of her technical expertise to give her expert opinion the defendant under reported his income, basing her opinion on an examination and analysis of the defendant's records and her ability to trace the flow of income and disbursements as a revenue agent with training and twenty-five years of experience. *Id.* at 513–14. Other circuits also permit IRS agents to testify as expert witnesses. *See, e.g., United States v. West,* 58 F.3d 133, 139–141 (5th Cir.1995) (IRS agent admitted as expert witness to explain basis of findings and calculation of taxes owed); *United States v. Notch,* 939 F.2d 895, 900 (10th Cir.1991) (government expert permitted to testify regarding understated personal income using net worth method of proof); *United States v. Windfeld-*

*er*, 790 F.2d 576, 581 (7th Cir.1986) ("Expert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence."); *United States v. Stokes*, 998 F.2d 279, 280–81 (5th Cir.1993) (IRS agent permitted to testify as expert in calculation and compilation of income and taxes); *United States v. Pedroni*, No. 99–5182, 2002 WL 993573 (3d Cir. Apr.18, 2002) (IRS agent permitted to testify as expert witness regarding tax returns and financial transactions, the taxing structure as it pertained to motor fuel excise tax, and taxes and the methods of evasion or tax fraud).

■ The fact that Ms. Cantrel testified at the beginning of the trial as a fact witness did not impede her ability to testify at the end of the prosecution's case-in-chief as a summary witness and/or as an expert witness. In *United States v. Tocco*, an FBI agent testified as both a fact witness and an expert witness, and the Sixth Circuit permitted him to testify in multiple capacities, particularly because the district court and the prosecutor took steps to ensure the jury was informed of the dual roles. 200 F.3d 401, 418 (6th Cir.2000). To emphasize the FBI agent's dual roles, the agent testified early in the trial as a fact witness and again at the conclusion of the trial as an expert witness. *Id.* at 419. Further, the district court instructed the jury just before the agent gave his opinion and again in the jury charge that it should consider the FBI agent's dual role in considering his expert testimony. *Id.* In light of these measures, the Sixth Circuit concluded discretion was not abused in permitting a government employee to testify as a fact witness and as an expert witness. *Id.*

The prosecution proposed calling Ms. Cantrel at the end of its case-in-chief as both a summary witness and as an expert witness, resulting in Ms. Cantrel testifying in three capacities during the course of the trial: as a fact witness, as a summary witness, and as an expert witness. Ms. Cantrel testified as a fact witness regarding her observations when she performed a civil audit of Benton Manufacturing Company and dealt with Defendants Charles Stone and Dora Stone. She received permission to observe other testimony at trial and intended to provide summary testimony. She also intended to provide opinion testimony as an expert witness. Although the Court's review of the cases indicated this would be proper, it is nevertheless worthwhile to touch upon the issue of the "three-headed" witness.

In *United States v. Moore*, an IRS agent testified in a multi-faceted capacity due to his involvement in investigating the case, his specialized knowledge and background in tax matters, and his role in summarizing the testimony offered at trial. 997 F.2d 55, 57 (5th Cir.1993). At trial the IRS agent testified as a general tax expert, as a direct witness of events leading to the prosecution, and as a summary witness. *Id.* The IRS agent permissibly testified about his personal investigation and the summary of the evidence, and he could have given his opinion of the evidence based on underlying facts within his area of expertise. *Id.* at 59. After reviewing the case, the Fifth Circuit stated the multi-faceted nature of the IRS agent's testimony was admissible. *Id.* In *United States v. West*, the Fifth Circuit approved another IRS agent providing testimony as a "summary expert" based on her specialized training and experience to help the jury understand the large amount of documentary evidence and the tax implications. 58 F.3d 133, 140 (5th Cir.1995). The agent used the testimony of other witnesses to explain the basis of her findings and calculation of the taxes owed, and the court reminded the jury her role was to explain the tax liability charged against the defendants. *Id.* at 141.

In light of these cases, the Court concluded the prosecution could offer Ms. Cantrel as both a summary witness and as an expert witness.

## B. Ms. Cantrel Was Permitted to Rely on Out–Of–Court Statements By Benton Manufacturing Employees As Bases For Her Opinions

■ The Government stated in its Trial Memorandum that Ms. Cantrel would base her opinions on her conversations with non-testifying employees of Benton Manufacturing Company. During argument on this issue, counsel clarified the conversa-

tions referenced were actually statements the employees provided to IRS criminal investigator Iris Bohannan during a 1998 interview that Ms. Cantrel attended. This occurred after Ms. Cantrel referred her civil audit of the Stones and Benton Manufacturing Company for criminal investigation and while Ms. Cantrel served in an assisting or cooperating capacity to the criminal investigators. Documents indicated counsel for Benton Manufacturing also attended the interviews, but there is no clear indication what role, if any, the attorneys were permitted to have in regard to the interviews. Specifically, there is no showing whether the Benton Manufacturing attorneys had opportunity to cross examine the employees regarding the statements they gave to the IRS criminal investigator.

■ The Confrontation Clause of the Sixth Amendment prevents the admission of out-of-court testimonial statements against a criminal defendant, unless the prosecution shows the out-of-court declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant on the out-of-court statement. *Crawford v. Washington*, —— U.S. ——, ——-——, 124 S.Ct. 1354, 1365–66, 158 L.Ed.2d 177 (2004) ("[T]he common law in 1791 conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations."). Despite the changes to hearsay analysis wrought by the Court's decision in *Crawford*, the Court in *Crawford* explicitly stated "[t]he [Confrontation] Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, —— U.S. at —— n. 9, 124 S.Ct. at 1369 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)).

Even if the particular Benton Manufacturing employees are not "unavailable" and even if the statements they gave to IRS criminal investigator Bohannan during the interviews Ms. Cantrel attended are "testimonial" as contemplated by the Court in *Crawford*, the statements may nevertheless be used by Ms. Cantrel in forming her expert opinions be-cause they would not be used to establish the truth of the matters the employees asserted. Rather, if defense counsel were to elicit the statements from Ms. Cantrel on cross-examination, the purpose of the out-of-court statements would not be for hearsay purposes but rather would be for evaluating the merit of the opinions Ms. Cantrel offered on direct examination. Because *Crawford* explicitly maintained the Confrontation Clause's inapplicability to statements used at trial for purposes other than establishing the truth of the matter asserted, Ms. Cantrel could rely on the employees' statements in forming her opinions.

## C. Federal Rule of Evidence 703

Because the Confrontation Clause did not prevent the use of the employees' statements by Ms. Cantrel in forming her opinions as an expert witness, the Court had to determine whether such use is permissible under the Federal Rules of Evidence.

The starting point for analysis is Federal Rule of Evidence 703. Rule 703 allows an expert to base her opinion upon three grounds: 1) facts within her personal knowledge, 2) facts presented to her at trial; and 3) facts presented to her outside of court, but not perceived by her personally, if those facts are the type of facts reasonably relied upon by experts in her field in drawing such conclusions. The Rule also imposes upon the trial judge the obligation to determine that the probative value of the otherwise inadmissible facts or data substantially outweighs their prejudicial effect, before the trial judge should allow such underlying facts to be disclosed to the jury.

■ The defendants' objection relates to the third ground, *i.e.*, facts presented to Ms. Cantrel outside of court. The rule now allows an expert to base her opinion on otherwise inadmissible evidence. However, such otherwise inadmissible evidence does not thereby become admissible. Rule 703 explicitly provides that otherwise inadmissible facts or data upon which an opinion is based do not themselves become automatically admissible simply because the expert relied upon them.

For such evidence the Rule imposes upon the trial judge a number of obligations to both ensure the expert is offering proper testimony and to safeguard the quality of information received by the fact finder. In essence, the Rule requires the Court to perform a gate keeping function.

> When an expert witness's proposed testimony is based wholly or in part on facts or data that the witness obtained outside the court room through a method other than personal perception, the trial court must make a preliminary determination whether the facts on which the witness relied are of a type that experts in the witness's field of expertise reasonably rely on in reaching such opinions.

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 703.04[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2004).

### 1. The otherwise inadmissible facts or data must be type reasonably relied upon in field

The next obligation imposed upon the trial court is the obligation to determine that the inadmissible facts or data are of the type reasonably relied upon by experts in the particular field. In *United States v. Bonds,* 12 F.3d 540 (6th Cir.1993), the Sixth Circuit applied that standard and determined that it had been met when it stated the experts in that case gave testimony that "was based on data and facts reasonably relied upon by experts in molecular biology and population genetics." *Id.* at 566. "It is not sufficient for the court simply to ascertain that other experts do in fact rely on that type of data. Rather, the court must make an independent assessment, based on a factual showing, that the material in question is sufficiently reliable for experts in that field to rely on it." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 703.04[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2004). In particular the Rule goes much further than just obviating the need to introduce the otherwise admissible underlying facts or data. Under the current rule an expert opinion may be predicated solely on inadmissible evidence such as hearsay. *Bonds,* 12 F.3d at 566; *Coal Res., Inc. v.*

*Gulf & W. Indus., Inc.* 954 F.2d 1263, 1273 (6th Cir.1992). For example, in *Trepel v. Roadway Express, Inc.* the Sixth Circuit concluded because an expert in the field of appraising African art frequently relied upon evidence of comparable sales regardless of how it came to him, the district court erred when it did not allow the expert witness to relate an out-of-court statement as to the worth of an art object. 194 F.3d 708, 717 (6th Cir.1999).

### 2. Court must make Rule 104(a) determination

Moreover, in cases where the expert seeks to give testimony based upon otherwise inadmissible evidence, an obligation is imposed upon the trial court to determine, pursuant to Rule 104(a), both that the facts or data relied upon by the expert are of a type relied upon by experts in the particular field and that such reliance is reasonable. *Advent Sys. Ltd. v. Unisys Corp.,* 925 F.2d 670, 682 (3d Cir.1991). In *Sphere Drake Insurance PLC v. Trisko,* 226 F.3d 951, 955 (8th Cir. 2000), the expert investigator testified he routinely relied on statements of informants as an investigating police officer. On that basis the Eighth Circuit stated he was permitted to rely on informant statements in forming his expert opinion. *Id.* Other courts are in agreement that the trial court may consider the expert's own testimony concerning the types of data that are reasonably relied upon by experts in his field. *Indian Coffee Corp. v. Procter & Gamble Co.,* 752 F.2d 891, 895–97 (3d Cir.1985). In addition to relying on the experts own testimony, the trial court may rely upon other sources of information it deems reliable, such as the testimony of other experts. The court may consult learned treatises. And in appropriate cases the court may take judicial notice regarding the types of data that are reasonably relied upon by experts in the field.

### 3. Court must scrutinize specific facts relied upon by expert

Another obligation placed upon the trial court is the duty to carefully scrutinize the specific facts relied upon by the expert to ensure that the expert's reliance is reason-

able in the particular case. "The trial court's determination should be on a case-by-case basis." *Weinstein's Federal Evidence* § 703.04[2]. As a matter of logic the greater reliance by the expert on inadmissible facts that the court finds to be untrustworthy, the less likely it is that the reliance is reasonable. "The appellate courts have been reluctant to impose on trial courts any specific considerations they should include in their reasonableness analyses." *Id.* In *United States v. Locascio,* 6 F.3d 924, 937–38 (2d Cir.1993), the prosecution presented expert testimony about the operation, structure, membership, and terminology of organized crime families, some of which was based on hearsay. The court of appeals upheld the admission of the testimony, noting that law enforcement agents routinely rely upon such hearsay in the course of their duties. *Id.*

### 4. Expert must not be conduit for hearsay

The last obligation placed on the trial court is that it must ensure that the expert witness is truly testifying as an expert and not merely serving as a conduit through which hearsay is brought before the jury. *United States v. Lundy,* 809 F.2d 392, 395 (7th Cir. 1987). Assistance to the trier of fact is the basic purpose of expert testimony. To assist the trier of fact the court must ensure that the witness is giving expert opinion and not merely the opinion of an expert. In other words, the expert must bring his own expertise to bear. If the expert merely relates inadmissible hearsay to the fact finder, he is not aiding the fact finder. Essentially, the value the expert brings to the trial process is his ability to apply his expertise to the facts and draw inferences from them.

Accordingly, the Court applied the above principles and allowed Ms. Cantrel to testify pursuant to Rule 703.

### III. *IMPACT UPON DEFENDANT WOODY*

Defendant Woody also objected to Ms. Cantrel's testimony but on other grounds. He argued that because he was not charged in Counts Two, Three, and Four, her testimony was irrelevant to the charges against him and would be prejudicial. The Court did not believe this was a valid ground to disallow Ms. Cantrel's testimony. The jury was instructed at the beginning of the trial to consider each defendant separately and again was instructed to do so at the end of the trial. The Court does not see why such jury instructions were not sufficient to alleviate any concerns of prejudice to Defendant Woody.

### IV. *CONCLUSION*

The Court **DENIED** Defendants' objection to the prosecution's use of IRS Revenue Officer Teresa Cantrel as an expert witness. The Court allowed Ms. Cantrel to form her opinions in reliance on statements she heard from Benton Manufacturing employees to the extent permitted by Federal Rule of Evidence 703 because such reliance is not prohibited by the Confrontation Clause of the Sixth Amendment.

**SO ORDERED.**