**Marcus GHOLAR, Plaintiff**

v.

**A O SAFETY and 3M–Aearo Technologies, LLC, Defendants.**

**Cause No. 1:12CV387–LG–JCG.**

United States District Court, S.D. Mississippi, Southern Division.

Signed Aug. 19, 2014.

James L. Davis, III, Law Offices of Jim Davis, Gulfport, MS, for Plaintiff.

John Alexander Purvis, Simon Turner Bailey, Bradley Arant Boult Cummings, LLP, Jackson, MS, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF MR. JOHN RYAN

LOUIS GUIROLA, JR., Chief Judge.

BEFORE THE COURT is the Defendants' Motion [104] to Exclude the Testimony of Mr. John Ryan. The issues were fully briefed by the parties, and the Court conducted a hearing. After the hearing, the parties were given additional time in which to file supplemental briefs. After due consideration of the arguments of counsel, testimony and evidence produced at hearing, and the relevant law, it is the Court's opinion that Mr. John Ryan is not qualified to provide expert opinion testimony in this case. Accordingly, the defendants' motion will be granted and Mr. John Ryan's testimony excluded.

#### BACKGROUND

Marcus Gholar alleges that he was wearing safety goggles manufactured and/or distributed by the defendants while drilling holes in a piece of metal. He alleges that a shard of metal struck him through the goggles "and hit his left eye and put it out." (Am. Compl. 2 (¶ 9), ECF No. 27). He testified that he was wearing eyeglasses underneath the goggles at the time of the accident. (Def. Mot. Summ. J. Ex. A 74, ECF No. 102–1). When the metal shard hit the goggles it either knocked them off or he threw them off. (*Id.* at 100). The metal shard also broke out the left lens of his eyeglasses. (*Id.* at 102–03). He testified to a hole on the left side bottom of the goggles where the metal

shard entered the goggles. (*Id.* at 104–05, 130). The lens remained connected to the frame. (*Id.* at 104–05). After the accident, Gholar returned the goggles to the workstation. He later retrieved what he thought were the same goggles, and kept them in storage until he filed this lawsuit and gave the goggles to his counsel.

Gholar's employer told him that the business did not have insurance, (*id.* at 131–32), and Gholar could not afford to go to the hospital (*id.* at 133), and so he did not get medical attention for his eye until a few days after the accident. (*Id.*). The clinic he visited referred him to an ophthalmologist, who removed "some kind of object" from Gholar's eye. (*Id.* at 137). Gholar has lost vision in his left eye and can no longer perform his work. He alleges that either A O Safety or 3M manufactured and/or distributed the safety goggles with a design defect, that the goggles were unreasonably dangerous, and that the defendants knew about the dangerous nature of the goggles and failed to provide warnings to consumers.

## PLAINTIFF'S EXPERT, JOHN RYAN

Gholar engaged John Ryan, P.E., to analyze the goggles and provide expert opinions about their design. Ryan testified in his deposition that he believed the lens was polycarbonate and the frame was "a type of PVC, plastic frame." (Ryan Dep. 49, ECF No. 102–7). He did not know specifically if these materials were used in the subject goggles, but "[t]ypically, these—the lenses are made out of polycarbonate." (*Id.* at 50). He conducted online research to determine what materials safety goggles are generally made of. (*Id.* at 50–51). He understood that the subject goggles were manufactured sometime in the 2003 to 2010 timeframe, although he was not sure why he had that understanding. (*Id.* at 61).

The lens of the subject goggles was rated Z87 plus and the frame was rated Z87. (*Id.* at 53). Z87 plus indicates a higher impact rating than Z87, although Ryan could not state what the manufacturer did differently to obtain the different ratings. (*Id.* at 54, 57–58). In order to conduct his tests, Ryan purchased ten pair of Z87 goggles and used two pairs of Z87 plus goggles that he either purchased or already owned and had been using. (*Id.* at 56, 71). He also conducted tests on the subject goggles. When Ryan received the subject goggles, the frame and lens were no longer connected along the bottom edge. (*Id.* at 45–46, 47).

Ryan conducted hardness, ball drop and penetration tests on the subject goggle lens, finding that it met the ANSI standards as to all three. However, it failed a high-mass penetration test, as the lens separated from the frame more than allowed by the ANSI standard. Ryan testified that he concluded the goggles were defectively designed, because, over time, the frame became too stiff, resulting in a tendency of the frame and lens to separate from one another when impacted.

When questioned at the hearing, Ryan could not state what the industry standard was for retaining flexibility in a safety goggle frame. He thought that the frame should remain flexible for longer than it had though, because the lenses were removable and the frames might house any number of lenses over the years they were in service. He testified that the manufacturer should use a frame material "that doesn't degrade in the manner that this [frame] material degrades in over time."

When questioned about a possible manufacturing defect claim, Ryan stated that he did not know what the manufacturing specifications were for any of the goggles he tested, and therefore he did not know if

the subject goggles were manufactured without a defect.

## A. Daubert Standard

■ Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir.1993) (quoting *United States v. Webb*, 625 F.2d 709, 711 (5th Cir.1980)). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir.1999) (citing *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 781 (3d Cir.1996)). The issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues [in the case]." *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir.1999) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir.1992) (quoting *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir.1985)).

## B. Ryan's Qualifications to Testify

■ Ryan is a professional engineer with a bachelor's degree in mechanical engineering, and is licensed in three states. He testified that he has experience in safety engineering, but he has no experience in safety goggle design. He has never worked for a safety goggle manufacturer, served on an ANSI committee, or had any other experience with the design or manufacture of safety goggles. He has not published articles relating to safety goggle design, taught any courses on safety goggle design, or otherwise had any involvement with designing safety goggles. He has not written warnings for safety goggles or conducted any research or inquiries into the area of safety goggle warnings.

■ Although an expert need not have specialization in every area in which he will be called to testify, Rule 702 nevertheless requires that the expert be qualified in the relevant field. A review of Ryan's deposition, and his testimony at hearing, shows a lack of qualifications in the field of safety goggles design and/or manufacture. He was unable to show that his training or experience as a safety engineer gave him expertise in the field of safety goggle design or manufacture. His testimony will not assist the jury in deciding the factual and legal issues in this case.

## C. The Relevancy of Ryan's Testimony

■ After reviewing all of Ryan's testimony regarding his analysis of the design of the safety goggles, it is apparent that he has tested for a manner of injury that did not occur in this case. Gholar testified that a small piece of metal penetrated the frame of the goggles he was wearing; the lens and frame did not separate. Ryan

similarly testified that the subject goggles had a small hole at the junction of the frame and lens that could have been the hole referenced by Gholar. But Ryan's conclusion that the goggles were defectively designed rests on the failure of the lens and frame to stay connected for all of the ANSI tests. As defendants point out, the testing conducted by Ryan could not have explained the mode of product failure that is alleged to have occurred in this case, because the frame and lens did not separate when Gholar was wearing the goggles. It is difficult to see how Ryan's testimony could be helpful to a jury tasked with determining whether a small piece of metal pierced the frame of a pair of safety goggles because they were defectively designed.

## D. The Reliability of Ryan's Testimony

 Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). In *Daubert,* the Supreme Court enumerated five non-exclusive factors to consider when assessing whether the proffered expert's methodology is reliable. These factors are: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert,* at 593–94, 113 S.Ct. 2786; *Burleson v. Tex. Dep't of Crim. Justice,* 393 F.3d 577, 584 (5th Cir. 2004).

Ryan's opinion that there was a design defect in the safety goggles is not based on sound methodology and must be excluded. As noted above, the ANSI standard that Ryan used to perform his tests does not address the impact that occurred in this case. Therefore, it is not particularly helpful to know that the subject goggles passed almost all of Ryan's ANSI-based testing. The relevant question is whether the goggles were defectively designed because the frame (or junction of the frame and lens) did not repel a small metal particle that impacted it at high speed. Ryan did not attempt to answer that question, and for that reason the Court finds his methodology unreliable.

 Ryan's opinion that there was a safer alternative design for the safety goggles is also not based on sound methodology and must be excluded. Ryan did not know when the safety goggles at issue here were manufactured, what materials were used, or what the design specifications were. This lack of background knowledge calls into question the reliability of any subsequent opinion on any alternate design, as it suggests that Ryan does not know the specifics of safety goggles as well as an expert should. Without knowledge of the design specifications of the subject goggles, Ryan cannot offer a reliable expert opinion on the feasibility of alternate designs. Any opinion Ryan may offer is unreliable because it has not been reached by employing the same rigorous methodology that an expert in designing safety goggles would use when considering alternate designs. *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167 (noting that the point of the *Daubert* analysis "is to make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

### E. The Manufacturing Defect Claim

Ryan had no opinion regarding a manufacturing defect, stating only that he did not know the manufacturing specifications, and therefore did not know if the subject goggles were manufactured with a defect. Accordingly, if the Plaintiff makes a manufacturing defect claim, John Ryan has no opinion to offer in support of that claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendants' Motion [104] to Exclude the Testimony of Mr. John Ryan is **GRANTED.** John Ryan will not be permitted to testify at trial.